McCORD, Judge.
This appeal is from a final order approving and directing payment of certain funds by The Florida Department of Insurance as ancillary receiver of Imperial Insurance Company to the Florida Insurance Guaranty Association. We affirm.
In 1975, appellant, Insurance Commissioner. of the State of California (hereafter referred to as domiciliary receiver) was appointed by the Superior Court of Los Ange-les County, California, as conservator of Imperial Insurance Company (hereafter referred to as Imperial) for rehabilitation purposes. Immediately following this appointment, the Florida Department of Insurance (hereafter referred to as ancillary receiver) was appointed by the court below as the ancillary receiver of Imperial and was directed to take possession of all property and assets of Imperial located in Florida. The court below further enjoined all persons from, among other things, maintaining or instituting any action against Imperial.
The ancillary receiver, pursuant to the lower court’s order, came into control of certain premium money located in Florida which had been previously paid by insureds to Imperial’s general agent in Florida. In an effort to obtain equitable treatment for all insureds and claimants, wherever located, and in an effort to foster the rehabilitation of Imperial, the domiciliary receiver and the ancillary receiver entered into an agreement whereby the ancillary receiver agreed to cause premium money to be remitted to the domiciliary receiver. We note that the agreement did not contain a time certain for the remittance. In return, the domiciliary receiver agreed that Florida policy holders, claimants and creditors would be treated equally with all other policy holders, claimants and creditors and that it would handle, defend and pay all proper Florida claims in the regular course of business without preference to anyone else. In addition, the agreement contained the following clause:
In the event the present conservatorship status of Imperial/Signal is changed either in California or in Florida to one involving liquidation of the company due to insolvency, this agreement will be automatically terminated and dissolved without the necessity of further action by either party hereto.
Both the court below and the California court approved this agreement, and the court below modified its order appointing ancillary receiver to permit Florida agents to remit premium money to the domiciliary receiver. Then, on instructions of the ancillary receiver, the managing general agent of Imperial for Florida, on March 19, 1976, issued and mailed to the domiciliary receiver a check in the amount of $1,322,934.67, which consisted of all premium funds held in Florida. Shortly thereafter, the domiciliary receiver advised the ancillary receiver that “there has been no progress in attempts to rehabilitate the companies,” that “[a]ll indications point to the companies be *271 ing in worse condition than they [formerly] appeared to be,” and that it may be “eventually necessary to liquidate these companies.” The ancillary receiver, fearing that Imperial was headed for liquidation and that, if such occurred, Florida claims against Imperial under California statutes would be given unequal treatment with California claims, had payment stopped on the check.
It later developed that the ancillary receiver’s fears of liquidation, which had been engendered by the aforesaid letter from the domiciliary receiver, were justified. In January 1978 the receivers were appointed domiciliary and ancillary receivers of Imperial for purposes of liquidation.
This appeal arose from the domiciliary receiver’s opposition to ancillary receiver’s motion to the trial court for authority to use the aforesaid money over which it had control to reimburse the Florida Insurance Guaranty Association (hereinafter referred to as FIGA) for claims-handling expenses incurred during the ancillary liquidation proceedings.
FIGA is an organization created under Part II, Chapter 631, Florida Statutes, whose members consist of all persons, with some exceptions, who write insurance and are licensed to transact business in Florida. The purpose of Part II, Chapter 631, Florida Statutes, is in part to provide a mechanism for payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policy holders because of the insolvency of a member insurer. See § 631.51, Florida Statutes. FIGA was created in order to accomplish this purpose and to protect policy holders of solvent insurers from higher rates by providing for the payment of FIGA’s claims-handling expenses, on a priority basis, from the insolvent insurer’s Florida assets. §§ 631.271 and 631.397, Florida Statutes (1979).
The domiciliary receiver’s opposition to payment of FIGA’s claims-handling expense from the premium monies held in Florida is predicated upon its view that such payment will constitute preferential treatment of FIGA’s claim as opposed to other claims against Imperial. It appears that these funds are primarily, if not entirely, the funds covered by the aforesaid check upon which payment was stopped. The domiciliary receiver contends that these funds should have been sent to it pursuant to the foregoing agreement and that, therefore, they should not now be paid to FIGA on its claim but should be transmitted to the domiciliary receiver for disbursement by it according to the California statutes; that the trial court’s order authorizing payment of FIGA’s claims-handling expenses “condones and approves an intentional and willful breach” of the agreement. The agreement, however, was predicated upon a representation of the domiciliary receiver which was placed in one of the agreement’s “whereas” clauses as follows:
[T]he California Conservator [Domiciliary Receiver] has determined that liquidation of [Imperial] is not indicated and that the company has assets sufficient to be operated under a long-term conservator-ship. . . . (Emphasis supplied.)
Thus, it appears that the agreement was predicated on a mistake of fact which was indicated when, immediately after sending the remittance, the domiciliary receiver advised the ancillary receiver of the poor financial condition of Imperial and the possibility of liquidation and was confirmed when liquidation subsequently occurred. Therefore, the trial court was correct in directing that FIGA’s claims-handling expenses be reimbursed from Florida premium funds of Imperial which were mar-shalled by the Florida ancillary receiver pursuant to orders of the court. In Clark v. Williard, 294 U.S. 211, 55 S.Ct. 356, 79 L.Ed. 865 (1935), the Supreme Court said:
Every state has jurisdiction to determine for itself the liability of property within its territorial limits to seizure and sale under the process of its courts.... All that Montana does by the decree under review is to impose upon such ownership the lien of judgments and executions in conformity with local law. In this there is no denial to the statutes of Iowa or to *272 its judicial proceedings of the faith and credit owing to them under the Constitution of the United States.

Choice is uncontrolled, as between one policy and the other, so far as the Constitution of the Nation has any voice upon the subject. Iowa may say that one who is a liquidator with title, appointed by her statutes, shall be so recognized in Montana with whatever rights and privileges accompany such recognition according to Montana law. For failure to give adherence to that principle, we reversed and remanded when the case was last before us. Iowa may not say, however, that a liquidator with title who goes into Montana may set at naught Montana law as to the distribution of Montana assets and carry over into another state the rule of distribution prescribed by the statutes of the domicile. (Emphasis supplied.)
Florida policy with regard to insolvent foreign corporations generally is stated in Southern Colonization Co. v. Parten, 83 Fla. 300, 91 So. 263 (1922), to the effect that creditors of an insolvent foreign corporation may seek protection for their claims through the appointment of an ancillary Florida receiver to marshall and distribute the corporation’s Florida assets under the Florida Insurance Code. Comity and equity with other states, however, is not overlooked. The Florida legislature adopted, as a part of the Florida Insurance Code, the Uniform Insurers Liquidation Act (UILA), which was designed to remedy problems associated with insolvencies of insurers operating in multiple states. One of these problems was the diversity of state laws concerning preferences. Uniform Insurer’s Liquidation Act (13 U.L.A. 430-31) (West 1980). UILA is designed to accomplish reciprocity. Florida, the ancillary state here, has adopted it. §§ 631.011(12) and 631.211, Fla.Stat. (1979). California, the domiciliary state, has not. Had California adopted this act, we would have no problem. Its priorities for payments of claims against insolvent insurers would be identical to Florida’s, and FIGA would be on a par with California’s own guaranty association, CIGA, in payment by the domiciliary receiver of claims-handling expenses. When the California court adjudicated Imperial insolvent and ordered its liquidation on January 10, 1978, however, the California statutes gave CIGA a priority status superior to that given to FIGA and all other guaranty associations. Cal.Ins.Code § 1033 (West 1972). There was evidence before the trial court that application of this California statute, by giving preference to CIGA, would take substantially all of Imperial’s assets available for payment of claims. Thus, the court below was confronted with the proposition that, if it ordered that these Florida marshalled funds of the insolvent insurer be sent to the domiciliary receiver in California, they would be swallowed up by the claim of CIGA to the exclusion of FIGA.
The domiciliary receiver relates that the above-cited statute was amended in 1979 to provide that guaranty associations in all states be treated equally. Cal.Ins.Code § 1033 (West Supp.1981). The statute, however, does not provide for retroactive application, and the question of whether or not it will be given retroactive application by the courts of California is undetermined.
A second preference created by the California statutes grants CIGA the benefit of reinsurance proceeds generated on claims paid by it. Cal.Ins.Code § 1063.2(d) (West 1972). A similar preference is not given to FIGA or any other guaranty association. The domiciliary receiver expresses doubt as to the validity of this preference and asserts the possibility that the reinsurance provision will be construed by the California courts as giving an unlawful preference to CIGA. We do not have such a construction at this time, however.
Since the Florida Department of Insurance was justified under the circumstances in withholding the money in question and since California has not adopted the Uniform Insurance Liquidation Act and is, therefore, not a reciprocal state with Florida under this act and its laws, at best, are uncertain as to whether or not the claim of *273 FIGA would be given equal priority for payment with the claim of CIGA if the Florida-generated funds were sent to the domiciliary receiver, we find no error in the ruling of the lower court.
AFFIRMED.
ERVIN and SHIVERS, JJ., concur.