NEW JERSEY PROPERTY-LIABILITY INSURANCE GUAR-
ANTY ASSOCIATION, A PRIVATE NON-PROFIT UNIN-
CORPORATED LEGAL ENTITY, APPELLANT, v. JAMES
J. SHEERAN, COMMISSIONER OF INSURANCE OF THE
STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 23, 1975—Decided December 1, 1975.

Before Judges LYNCH, ACKERMAN and LARNER.

*Mr. Walter F. Waldau* argued for appellant (*Messrs. Stryker, Tams & Dill,* attorneys; *Mr. Walter F. Waldau and Ms. Elizabeth A. Westcott* on the briefs).

*Mr. Herbert K. Glickman,* Deputy Attorney General, argued for respondent (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Omer F. Brown, II,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LYNCH, P. J. A. D. Plaintiff New Jersey Property-Liability Insurance Guaranty Association (Association) is an organization of all property and casualty insurance companies authorized to do business in New Jersey. The Association was created by § 6 of the New Jersey Property-Liability Insurance Guaranty Association Act, *N. J. S. A.* 17: 30A–1 *et seq.* (Guaranty Act). In the present case the Association appeals from an action of the Commissioner of Insurance of New Jersey (Commissioner), notifying the Association of the insolvency of Summit Insurance Company of New York (Summit), a member of the Association, thus triggering the Association's liability for certain claims of Summit's New Jersey policyholders.

The main purpose of the Guaranty Act is to protect New Jersey policyholders of an insolvent insurance company from the financial loss and excessive delay in payment of claims that can result from an insolvency. *N. J. S. A.* 17:30A–2(a). To provide the mechanism for such protection, the act created the Association and gave it the power to assess its member-insurers for the costs of protection. *N. J. S. A.* 17:30A–8(a)(3). In the event of a member-insurer's insolvency, the Association becomes liable for substantially all claims against the insurer by New Jersey claimants and policyholders that are incurred prior to or within 30 days after the determination of the insolvency. *N. J. S. A.* 17: 30A–8(a)(1).

The Guaranty Act defines an "insolvent insurer" as an insurer authorized to do business in this State which is determined to be insolvent by a "court of competent jurisdiction." *N. J. S. A.* 17:30A–5(e). It is this latter clause which creates the issue for decision here. More particularly the question is whether the North Carolina General Court of Justice, Superior Court Division (North Carolina court) was such a "court of competent jurisdiction" when, on March 17, 1975, on application of the Commissioner of Insurance of that state, it entered an order declaring that "the defendant, Summit Insurance Company of New York is in-

solvent." The order further appointed the Commissioner of Insurance of North Carolina "conservator" of Summit, and directed him to take into his possession all of the assets of that company within that state, as provided in *N. C. Gen. Statutes*, § 58–155.7.

On March 19, 1975 defendant Commissioner of Insurance of New Jersey, acting in accordance with *N. J. S. A.* 17: 30A–10(a)(1), notified the Association that the North Carolina court had declared Summit insolvent. On March 24, 1975, pursuant to his authority under *N. J. S. A.* 17: 30A–10(b)(1), the Commissioner ordered the Association to notify Summit's insureds and other interested parties of the insolvency and of their rights under the Guaranty Act. On April 10, 1975 the Association filed a notice of appeal (or in the alternative motion for leave to appeal) from the Commissioner's action.

The Association contends that the North Carolina court is not a "court of competent jurisdiction" within the meaning of the Guaranty Act and that the Commissioner's directive of March 19, 1975, which triggered the Association's liability for claims, was therefore without legal authority. The Association contends that the Guaranty Act must be interpreted so that only a court of the state of the insolvent insurer's domicile is deemed a "court of competent jurisdiction" within the meaning of the act.

The argument is that only the domiciliary state is competent as to all aspects of the corporate existence since it is the only state which can order liquidation of the corporation. Thus, in this instance the North Carolina court appointed the Commissioner of Insurance of that state as a conservator only of those assets of Summit which were within North Carolina. The Association also points out that on February 4, 1975, prior to the action of the North Carolina court, the Superintendent of Insurance of the State of New York, Summit's domicile, applied to the Supreme Court of that state, which, based on the Superintendent's finding that Summit was "insolvent," appointed the Superintendent

"rehabilitator" of Summit, pursuant to New York Insurance Law § 511. At that time, the Association notes, the New Jersey Commissioner of Insurance advised the Association *not* to begin its operations under the Guaranty Act. On the other hand, when the North Carolina court appointed its Superintendent conservator of Summit's assets within that state, the New Jersey Commissioner allegedly reversed himself and set in motion the mechanism of the Guaranty Act.

The Commissioner contends that the February 4, 1975 order of the Supreme Court of New York was not based on a determination by the *court* that Summit was insolvent, but rather was grounded in a determination of the Superintendent to that effect. In contrast, the Commissioner argues that the order of the North Carolina court on March 17, 1975 contained a determination of insolvency by the *court itself,* which was a "court of competent jurisdiction."

The Association concedes that it did not immediately obey the Commissioner's directive of March 24, 1975 and notify Summit's insureds and other interested persons of the determination of insolvency by the North Carolina court. It applied for emergent relief from the Appellate Division of the Superior Court of New Jersey to stay the requirement that notice be immediately provided. When that application was denied it appealed that determination to the Supreme Court of New Jersey, which also denied appellant's application. Thereafter, without waiving its right to appeal the validity of the Commissioner's letter of March 24, 1975, the Guaranty Association on April 17 and April 24, 1975 published notice of the North Carolina court's determination of insolvency in the *Trenton Times,* the *Camden Courier* and the *Newark Star-Ledger.*

On May 28, 1975 the New York Supreme Court terminated the rehabilitation proceedings ordered on February 4, 1975, declared that Summit was insolvent and ordered the company's liquidation. We are advised that it was shortly after the New York judgment that notice by mail

was given to Summit's policyholders and other interested parties.

Whether the New Jersey Commissioner's actions with respect to the New York order of February 4, 1975, and the North Carolina order of March 17, 1975, were or were not inconsistent, does not affect our task of deciding the meaning of the phrase "court of competent jurisdiction" as used in § 5 of the Guaranty Act.

Statutes are to be interpreted in the light of their purpose and logic. 2A *Sutherland, Statutory Construction* (4 ed., Sands 1972), § 45.05; *Horwilz v. Reichenstein,* 15 N. J. 6 (1954). Section 2 of the Guaranty Act expressly states its purpose: to avoid "excessive delay" in the payment of claims and to avoid "financial loss to claimants or policyholders because of the insolvency of an insurer * * *." N. J. S. A. 17:30A-2(a). The act further provides that it is to be "liberally construed to effect the purpose under section 2 which shall constitute an aid and guide to interpretation." N. J. S. A. 17:30A-4(a). To fulfill these objectives, the act must be interpreted to protect policyholders and claimants and to advance their interests rather than the interests of the Association. If the Association's interpretation were adopted, it would disserve the purpose of the act. It would cause, rather than hinder, "excessive delay" in the payment of claims. If claimants and policyholders must await a determination of insolvency — and indeed an order of liquidation — by a court of the insurer's domicile, they would be subject to the very delays the legislation sought to prevent. Here Summit stopped paying claims on February 4, 1975, the date of the appointment of the Superintendent of Insurance of New York as rehabilitator. Adopting the Association's interpretation of the act would have postponed the triggering of protection and concomitant payment of claims under the act until May 28, 1975, when the New York Supreme Court entered its order of liquidation of Summit.

If, as contended by the Association, the Legislature intended to say that only a court of the insurer's domicile is a "court of competent jurisdiction" and that a determination of insolvency means nothing less than the entry of an order of liquidation by such a court, the act could easily have stated just that in so many words. For example, the Ohio Guaranty Act[1] defines "insolvent insurer" as one "decreed by a court of competent jurisdiction of the *state of such insurer's domicile* to be insolvent, and ordered by or pursuant to the authority of such court to be liquidated." *Ohio rev. Code* § 3955.01(c) (Emphasis supplied). Also, the Pennsylvania Guaranty Act defines "insolvent insurer" as "an insurer determined to be insolvent * * * by a court of competent jurisdiction of *the insurer's domiciliary state* * * *." 40 Pa. Statutes § 1701.103·(6) (Emphasis supplied).

 Entirely apart from the foregoing analysis of the Legislature's intent, there really is no reason to belabor the issue. It is the rule in this State that unless another or different meaning is expressly indicated, statutory words should be given their generally accepted meaning. *N. J. S. A.* 1:1–1. See *Fahey v. Jersey City,* 52 *N. J.* 103, 107 (1968). The statutory words, "court of competent jurisdiction", are clear. A court has jurisdiction to decide a case if three elements are present. The state involved must have sufficient minimum contacts with the parties or their property to make the exercise of its authority reasonable; the state must have entrusted the exercise of that authority to the court in question and, lastly, the parties must be given notice and an opportunity to be heard. *Restatement, Conflict of Laws* 2d, Introductory Note, C. 3 (1971).

As stated in *Leachman v. Kite,* 133 *N. J. L.* 240, 241 (Sup. Ct. 1945), aff'd 133 *N. J. L.* 612 (E. & A. 1946):

---

[1] These acts, as well as the New Jersey act, were adopted following a model law proposed by the National Association of Insurance Commissioners.

First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. And, Third. The point decided must be, in substance and effect, within the issue. [at 241]

The North Carolina court satisfied the above criteria. Summit was authorized to do business in that state and had assets within its borders. The North Carolina legislature has authorized the court to determine insolvency in such cases. *N. C. Gen. Statutes* §§ 58–155.18, 155.2(1), 155.7. Finally, Summit received proper notice and a hearing. Clearly, the North Carolina court was a "court of competent jurisdiction."

It follows that the court's determination of March 17, 1975 that Summit was insolvent triggered the mechanism of New Jersey's Guaranty Act. Therefore, the actions of the Commissioner on March 19 and March 24, 1975, are affirmed. However, in view of the special circumstances that notice by mail to Summit's New Jersey insureds and other interested parties was not given until after the judgment of the New York Supreme Court of May 28, 1975, we conclude on equitable considerations that the Association should be obligated for all "covered claims" against Summit which arose prior to and 30 days after that date. See *N. J. S. A.* 17:30A–8(a)(1).