400 So.2d 813 (1981)
FLORIDA INSURANCE GUARANTY ASSOCIATION, INC., Appellant,
v.
STATE of Florida ex rel. the DEPARTMENT OF INSURANCE of the State of Florida, As Florida Receiver of Main Insurance Company, an Illinois Corporation, Appellees.
No. ZZ-130.
District Court of Appeal of Florida, First District.
June 30, 1981.
Marion R. Shepard and J. Stephen O'Hara, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellant.
Norman L. Miley, Jr., William T. Moore, John Reilly, Louis C. Bustamante of Helliwell, Melrose & DeWolf, Miami, for appellees.
LARRY G. SMITH, Judge.
Florida Insurance Guaranty Association, Inc. (FIGA) appeals an order appointing the Florida Department of Insurance as receiver of Main Insurance Company (Main), a foreign insurer domiciled in Illinois, and ordering liquidation of Main's assets located in Florida. The trial court's order of insolvency and liquidation is of concern to FIGA because the order triggered FIGA's statutory obligation to pay the covered claims of Main's Florida insureds and creditors under Sections 631.54(4), (5) and 631.57(1), Florida Statutes (1979).
FIGA's appeal presents for our determination the issue of whether the trial court's *814 order for liquidation of Main's assets located in Florida was within the statutory authority vested in the court under Chapter 631, Part I, Florida Statutes, the "Insurer's Rehabilitation and Liquidation Act" (IRLA). Resolution of this issue requires, initially, interpretation and construction particularly of Section 631.091, Florida Statutes. FIGA contends that the sole authority for an order of liquidation of a foreign insurer is found in Section 631.091, and that under this section a Florida court has no authority to order liquidation of a foreign insurer (such as Main) unless and until a receiver (or similar officer) has first been appointed in the insolvent insurer's domiciliary state (in this case  Illinois) "for the purpose of liquidating the business of such insurer." Section 631.091. Our reading of the statutes convinces us that FIGA's contention is correct, and since it is admitted by the parties that no order of liquidation has been issued in Illinois, the trial court's order under attack here was premature, and constituted error. We therefore reverse that portion of the trial court's order authorizing the Department to seize and liquidate all of Main's Florida assets. However, notwithstanding our reversal of this portion of the trial court's order, we question whether FIGA should be relieved of its statutory obligations to pay covered claims, and we remand for further consideration and ruling by the trial court on this point.
A few facts concerning the background of this litigation must be related. In January, 1977, a circuit court in Illinois entered an order appointing a domiciliary rehabilitator for Main. Shortly thereafter, the Florida Department of Insurance sought and was granted by the circuit court, Leon County, an order appointing it ancillary receiver of Main for purposes of conservation. During the next several years attempts were made by the domiciliary rehabilitator to rehabilitate Main, apparently without success. In the meantime, many Florida citizens who held final judgments against Main or had other claims were unable to obtain payment, and certain of Main's Florida insureds were unable to obtain representation by Main in actions brought against them. Several of these parties were allowed to intervene in the Florida court proceedings for the purpose of filing motions requesting that the trial court adjudicate Main insolvent. Subsequently, in October, 1980, the Department filed an application for an order to show cause, seeking an order appointing the Department as receiver for the purposes of liquidation. The Department alleged in its application, among other things, that Main had in Florida assets sufficient to warrant the appointment of a receiver for purposes of liquidation consisting of a deposit made under Section 624.411, Florida Statutes, with a book value of $312,000.00. Indications were that the Florida claims would far exceed this amount. After a hearing, the trial court entered an order finding Main insolvent under Section 631.011(5), Florida Statutes (1979), and appointing the Department as receiver of Main for purposes of liquidation.
Before proceeding with analysis of specific statutory provisions, we will refer to certain matters which we consider as part of the statutory context. The forced liquidation or reorganization of insurance companies doing business in several states presents unique problems which have been alleviated in some thirty-two states, to some extent, by the adoption in one form or another of the Uniform Insurers Liquidation Act.[1] An important feature of the Uniform Act as adopted in the several states is the enhancement of cooperation between the reciprocal states by provisions requiring that the Commissioner of Insurance or equivalent supervisory official be the receiver of a delinquent insurer. Section 631.011(2). The purpose of the Act is *815 to secure equal treatment for all creditors, wherever situated, of defunct or failing insurance companies. Springer v. Colburn, 162 So.2d 513 (Fla. 1964). In addition Florida, in common with some other states, has authorized the creation of a guaranty association (here FIGA, a non-profit corporation) as a mechanism for the protection of its own citizens against delay in payment and financial loss occasioned by the insolvency of an insurer. Section 631.511, Florida Statutes.[2] Funds for FIGA's payment of covered claims are raised by assessments levied by the Department against all "member insurers" (Section 631.54(6)) which are then remitted to and administered by FIGA's board of directors. Section 631.57(3)(a).
FIGA's liability for claims is governed by the statutes. Section 631.57(1), Florida Statutes, imposes the obligation upon FIGA to pay "covered claims," defined in Section 631.54(4) as claims arising out of insurance policies issued by an insolvent insurer. The term "insolvent insurer" is defined in Section 631.54(5), Florida Statutes (1979) as follows:
(5) "Insolvent insurer" means a member insurer authorized to transact insurance in this state, either at the time the policy was issued or when the insured event occurred, and against which an order of liquidation with a finding of insolvency has been entered by a court of competent jurisdiction if such order has become final by the exhaustion of appellate review. (Emphasis supplied)
The interconnection between the above statutory provision governing FIGA's liability for claims and the provisions of IRLA becomes immediately significant, because reference must be made to IRLA's provisions to learn how and under what circumstances an "order of liquidation" in connection with a finding of insolvency of a foreign insurer may be entered by a Florida court. It must be noted, first, that "Delinquency proceedings" pursuant to Chapter 631, filed in the name of the Department, "shall constitute the sole and exclusive method of liquidating ... an insurer, ..." Section 631.021(4).[3] Secondly, the sole ground for the entry by a Florida court of an order of liquidation as to a foreign insurer is contained in Section 631.091, which reads as follows:
631.091 Grounds for ancillary liquidation; foreign insurers. 
The Department may apply to the court for an order appointing it as ancillary receiver of and directing it to liquidate the business of a foreign insurer having assets, business or claims in this state upon the appointment in the domiciliary state of such insurer of a receiver, liquidator, conservator, rehabilitator, or other officer by whatever name called for the purpose of liquidating the business of such insurer.
FIGA argues, and we agree, that only one ground exists for an order authorizing the Department as receiver to liquidate the assets of a foreign insurer  that ground being, under the above quoted statutory provision, the appointment in the domiciliary state of a receiver, liquidator, conservator, rehabilitator, or other officer by whatever name called, "for the purpose of liquidating the business of such insurer." Thus, there being no order for liquidation of Main in Illinois, the domiciliary state, it was error for the trial court to order liquidation of Main's assets in Florida.
We think the meaning of Section 631.091 is clear, not ambiguous. The Department urges us, however, to read the language differently, to assume that the words "... for the purpose of liquidating the business of such insurer" appearing at the end of the paragraph, relate back and apply to the action to be taken by the Florida receiver *816 upon his appointment. Under the Department's view, there would be no necessity that there first be an order of liquidation in the domiciliary state prior to entry of an order of liquidation of the foreign insurer's assets in Florida. We cannot accept this view. The Department would have us read the statute, in part, as follows: "The Department may apply to the court for an order ... directing it to liquidate the business of a foreign insurer ... for the purpose of liquidating the business of such insurer." We will not attribute to the legislative draftsman the deliberate creation of a redundancy in the phrases pertaining to liquidation of the business of a foreign insurer, particularly when there is a plain, logical and rational meaning to the paragraph when read using the ordinary rules of grammar and punctuation.
We reject also the Department's contention that its reading, which it admits would be assisted by the placing of a comma after the word "called," is more compatible with the obvious legislative intent of IRLA. The "purpose" clause, Section 631.001(4), declares that the purpose of the act is "the protection of the interests of insureds, creditors, and the public generally," through
(a) Early detection of any potentially dangerous condition in an insurer and prompt application of appropriate corrective measures which are neither unduly harsh nor subject to unwarranted publicity needlessly damaging to the insurer;
(b) Enhanced efficiency and economy of liquidation through clarification and specification of the law to minimize legal uncertainty and litigation;
(c) Equitable apportionment of any unavoidable loss;
(d) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state.
Turning to the body of the act, examination of the provisions patterned after the Uniform Insurers Rehabilitation and Liquidation Act (see Section 631.211), as well as those supplementary provisions added to the Florida version of the act, reveals clearly and unmistakably that the vesting of predominant control in the domiciliary state of an ailing or insolvent insurer is the cardinal feature of the act. Thus, the act confers upon the Florida courts extensive authority concerning the rehabilitation or liquidation of domestic insurers, Sections 631.051, 631.061, and for the conservation or ancillary liquidation of the United States branch of alien insurers (an insurer formed under laws of a foreign country, Section 624.06(3), Florida Statutes), Sections 631.081, 631.131. Proof of insolvency as well as other conditions with respect to a domestic or alien insurer allows the Department to invoke the powers of the act through delinquency proceedings. By contrast, the authority of the Department and the courts is circumscribed, in the case of foreign insurers, to conservation of the foreign insolvent insurers' assets, Section 631.071, unless there has first been an order for liquidation in the domiciliary state, in which event liquidation of the foreign insurers' Florida assets may be ordered pursuant to Section 631.091.
Section 631.152, subsection (1), pertaining to ancillary receivership of foreign insurers, contains the directive that "[T]he department shall file a petition requesting the appointment on the grounds set forth in s. 631.091... ." Subsection (2) provides that the domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state "shall be vested by operation of law," with title to all property of the insurer, including that in Florida, with exception of "other property" not covered by the general vesting of title, and security deposits held by the ancillary receiver in Florida, if one is appointed.[4] By contrast, and to further illustrate the general statutory scheme *817 favoring paramount control by the domiciliary state, we note that Section 631.141 vests full title in the Florida receiver of an insurer domiciled in Florida, with the same reservations concerning assets in other jurisdictions that an ancillary receiver in Florida would have. Further, Section 631.131(2) recognizes the paramount authority and control vested in the receiver of the domiciliary state by expressly providing that all steps taken by the Florida Department of Insurance, as ancillary receiver, in the marshalling and liquidation of assets of a foreign insurer, shall not conflict with the rights of the domiciliary receiver.
Our interpretation of Section 631.091 is in harmony with the purposes of the act as set forth in Section 631.001(4)(a)-(d), earlier referred to, and with specific provisions of the act above discussed, as well as others. We note further that, in keeping with the announced purposes of protection of creditors, equitable apportionment of any unavoidable loss, and lessening of the problems of interstate rehabilitation and liquidation of insurers, the Florida act contains detailed provisions with respect to the filing of claims, Sections 631.161, 631.171 and 631.181, and contains special provisions with respect to preferred claims, special deposit claims, secured claims, and to priority of claims in general, Section 631.191.
IRLA is not of recent vintage. It was first enacted in 1959. The wisdom of the act, or its specific Florida variations, is a matter of concern to the Legislative Branch, not the courts. If the act or any particular provision places Florida citizens at a disadvantage, as compared to the citizens of any other state, this is an injustice the remedy for which lies solely within the province of the Florida Legislature, unless there is some constitutional infirmity (none being suggested by either party to these proceedings) which would enable a court to invalidate the offending provision. Experience in operating under the provisions of the act might have been insufficient, heretofore, to bring to the surface such problems as the Department now urges upon us as the basis for upholding the interpretation it succeeded in getting the trial court to accept. The trial judge's order contains the finding that the "manifest purpose" of Chapter 631 "has been utterly frustrated by the refusal of the Illinois Rehabilitator to either rehabilitate or liquidate Main, ... ." This court is not insensitive to the plight of Florida citizens who have and will continue to suffer financially until such time as their claims can be paid in the manner and to the extent prescribed by law. However, neither the Department's nor our own dissatisfaction with the efficacy of the act furnishes authority for us to rewrite this legislation, or to repeal those provisions that we think might stand as impediments to speedy settlement of the claims of Florida citizens.
Furthermore, in response to the Department's suggestion that unless this court upholds the order of the trial court we would be permitting the continuance of undue hardships on Main's insureds in this state, we have several observations. The first concerns the Department's reference, in oral argument, to the fact that it has not made stronger efforts during the long history of this problem to spur needed action in Illinois out of concern for principles of "comity." We find this approach somewhat inconsistent with the Department's insistence, in this proceeding, that we should in effect ignore certain of the reciprocal statutory provisions from which any such duty of comity owing to our sister state would arise. Secondly, we note that four regular sessions of the Florida Legislature (not counting the regular or special sessions just ended) have come and gone without amendments to the law which would have allowed the Department to demand action by FIGA toward payment of covered claims without further delay. Thirdly, we note the enactment in 1979 of an amendment to Section 631.54(5)[5] which imposed the additional requirement *818 of a court order of liquidation (which we have discussed in this opinion), in addition to a finding of insolvency, as a prerequisite to FIGA's obligation to pay claims against insolvent insurers. Absent the 1979 amendment referred to the trial court's order herein, finding Main insolvent, would have been sufficient to trigger FIGA's obligation to pay claims. This is so because, prior to the 1979 amendment, Section 631.54(5) defined "insolvent insurer" as an insurer "adjudicated to be insolvent by a court of competent jurisdiction, if such adjudication has become final by the exhaustion of appellate review." There formerly existed no requirement of an "order of liquidation." The trial court, under Sections 631.071(1) and 631.061(1) clearly has jurisdiction to adjudicate insolvency in connection with the appointment of the Department as ancillary receiver for purposes of conservation. Prior to the 1979 amendment this adjudication of insolvency, when affirmed on appeal, would have matured FIGA's obligation to pay covered claims. A New Jersey case illustrates the point. An adjudication of insolvency in connection with appointment of a conservator by a North Carolina court, under provisions similar to those in effect in Florida prior to the 1979 amendment, has been held sufficient to trigger the liability of New Jersey's insurance guaranty association. New Jersey Property & Liability Insurance Guaranty Association v. Sheeran, 137 N.J. Super. 345, 349 A.2d 92 (1975).[6]
In conclusion, it is our opinion that the change in the law governing FIGA's liability, effected by the 1979 amendment to Section 631.54(5), presents issues not adjudicated by the trial court's order, and which have not been briefed or argued in this appeal. As already indicated, the 1979 amendment substantially changed the conditions under which FIGA's liability for claims commenced. We note, however, that many, if not all claimants may have vested rights under policies issued or by virtue of other events occurring prior to the effective date of the 1979 amendment. No ruling has been made, nor is any suggested by this court, concerning whether the 1979 amendment, if retroactively applied to prior claims, would unlawfully impair the obligation of contracts. See Springer v. Colburn, supra.[7] We therefore remand this issue to the trial court for further consideration, including hearings and the receipt of evidence, if necessary, for determination of FIGA's liability as to any claims against Main accruing prior to the 1979 amendment.
Reversed and remanded for further proceedings consistent with this opinion.
ROBERT P. SMITH, Jr., and JOANOS, JJ., concur.
NOTES
[1] Uniform Laws Annotated, Master Edition, Volume 13, Notes and Commentary, pages 429-433, text page 434. Florida's version of the act (see Section 631.211, Florida Statutes), contains numerous variations, omissions and additional matter, as is true in many other states. Id., page 431. See Table of Reciprocal States, Section 631.141, F.S.A. 1981 pocket part.
[2] See O'Malley v. Florida Insurance Guaranty Association, Inc., 257 So.2d 9 (Fla. 1971), upholding validity of Insurance Guaranty Association Act, Chapter 70-20. Laws of Florida (1970).
[3] IRLA proceedings were unknown to the common law. Hence, the courts may not go beyond the specific statutory provisions of IRLA and fashion a remedy which is not provided for in the act. City of Miami v. Romfh, 66 Fla. 280, 63 So. 440 (1913).
[4] The trial court's order under review here purports to vest in the Department title to Main's assets to the same extent as would be authorized under the foregoing statutory provisions if Florida were the domiciliary state. Thus the trial court's order runs contrary to these statutory provisions, which are a part of the Uniform Act.
[5] According to Florida House and Senate Staff Reports the Department of Insurance apparently encouraged the 1979 amendment to Section 631.54(5). Those reports each contain the following comments:

"This bill imposes the additional statutory requirement of an order of liquidation to accompany a finding of insolvency before an insurer may be deemed an "insolvent insurer," at which time, in Florida, the Guaranty Trust Fund will be available to pay claims against the insolvent.
A spokesman from the Department of Insurance indicated that this change in language would clarify the conditions under which the Guaranty Trust Fund, which is contributed to by Florida insurers, will be available to pay claims against insolvent insurers.
There has been some questions in the past, in cases of out of state adjudication of insolvency in which the court orders rehabilitation of the insurer rather than liquidation, as to whether the Guaranty Trust Fund must pay claims against the insolvent. This bill clarifies, statutorily, that only an order of liquidation, rather than an order of rehabilitation, with a finding of insolvency, will trigger the application of the Guaranty Fund.
Because Florida courts have usually provided such liquidation orders along with findings of insolvency, this bill is not expected to have any substantial economic impact, according to the representative of the Department of Insurance."
Senate Staff Analysis and Economic Impact Statement, April 17, 1979, SB 694 Committee files, Senate Commerce Committee Office, The Capitol; House Committee on Insurance Staff Report, April 20, 1979, HB 1430, Committee files, State Archives Building, Cartons 475-478, and 478T.
[6] FIGA suggests that the 1979 amendment to Section 631.54(5), Florida Statutes, was motivated by the desire to avoid, in Florida, the same result as occurred in the Sheeran case. While we may concede such a possibility, we have no confirmation of this fact.
[7] No constitutional issues have been raised in this appeal and none have been addressed by this court.