642 So.2d 1149 (1994)
William R. HOBBS, Special Deputy Rehabilitator for American Financial Security Life Insurance Co., Appellant,
v.
DON MEALEY CHEVROLET, INC., et al., Appellees.
No. 93-2875.
District Court of Appeal of Florida, Fifth District.
September 23, 1994.
*1150 Ronald L. Collier of Abel, Band, Russell, Collier, Pitchford & Gordon, Chartered, Sarasota, for appellant.
James A. Edwards of Roth, Edwards & Smith, P.A., Orlando, for appellees.
*1151 DIAMANTIS, Judge.
William R. Hobbs, as Special Deputy Rehabilitator for American Financial Security Life Insurance Company (AFSLIC), timely appeals the trial court's non-final order denying his motion to dismiss for lack of jurisdiction.[1] We conclude that the trial court erred in ruling that it had acquired personal jurisdiction over AFSLIC and, thus, we vacate the trial court's order and remand this cause for further proceedings.
The plaintiffs filed a "Complaint for Breach of Contract, Money Damages, Equitable Relief, Declaratory Relief, Request for Injunction" against several defendants; namely, Thomas A. Warmus, American Way Service Corporation, American Way Service Corporation Southeast, American Way Life Insurance Corporation, American Way Casualty Company of Michigan, AFSLIC, and American Way Group of Companies. The subject matter of the plaintiffs' complaint was certain motor vehicle service agreements, referred to as EXTEND Service Contracts. Specifically, the complaint alleged that Thomas A. Warmus and the American Way Group of Companies, of which AFSLIC is a member, induced the plaintiffs to sell EXTEND Service Contracts to their customers and then later failed to honor the service contracts. One count of the complaint, a declaratory judgment action, also addressed the plaintiffs' obligation to repay to the defendants certain loans which were evidenced by promissory notes and secured by a mortgage on real property located in Orange County. The mortgage was in favor of the American Way Group and some of its member companies. The plaintiffs sought to set off the loan payments it owed to the defendants against any judgment for money damages the plaintiffs obtained against the defendants on the EXTEND Service Contracts claims.
Hobbs filed a motion to dismiss AFSLIC for lack of personal jurisdiction, contending that AFSLIC was not subject to the trial court's jurisdiction pursuant to Florida's long-arm statute, section 48.193, Florida Statutes (1991). Additionally, Hobbs asserted that the trial court lacked personal jurisdiction over AFSLIC as a matter of due process because minimum contacts did not exist between AFSLIC and the state of Florida.
In support of his motion, Hobbs filed an affidavit outlining AFSLIC's limited contacts with the state of Florida. The affidavit explained that AFSLIC was a Missouri-domiciled insurance company which wrote credit life and disability insurance. AFSLIC neither maintained, nor had ever maintained, a place of business in Florida, but AFSLIC was wholly owned by American Way Holdings, Inc., a Florida corporation located in Pompano Beach, Florida. AFSLIC maintained a certificate of authority to transact insurance in the state of Florida, but such authority was in the process of being suspended. AFSLIC was licensed to write insurance in Florida, as well as 43 other states, but was not engaged in the business of writing insurance in Florida. Although AFSLIC had one licensed agent in Florida, AFSLIC did not write credit life or disability insurance in Florida. AFSLIC had neither issued a certificate of insurance in Florida nor contracted to insure any risk in Florida. AFSLIC did, however, have five outstanding policies issued to Florida residents. One was issued directly to a Florida resident, and the other four were issued to Florida residents when they were residents of other states. AFSLIC inherited these policies from its predecessor company, Survivors Benefit Life Insurance Company. AFSLIC was a payee/mortgagee under the terms of a promissory note and mortgage on property located in Florida, but AFSLIC neither owned nor possessed any real property in Florida. AFSLIC had not entered into any contract which required performance in Florida, and it did not have a contractual relationship with the plaintiffs. Finally, Hobbs stated that AFSLIC did not write, nor was it licensed to write, extended automobile warranty insurance policies in Florida or any other state.
*1152 Hobbs subsequently filed an amendment to his motion to dismiss, asserting that the trial court lacked jurisdiction to consider the plaintiffs' claims pursuant to Florida's Insurers Rehabilitation and Liquidation Act[2] because AFSLIC was in rehabilitation in its domiciliary state of Missouri, no ancillary receiver for AFSLIC had been appointed in the state of Florida, and Missouri and Florida were reciprocal states under the Act.
In opposing Hobbs' motion to dismiss, the plaintiffs presented evidence that, during the years 1981 through 1993 (with the exception of 1991), AFSLIC registered to do business in the state of Florida and that, in doing so, AFSLIC designated the Florida Insurance Commissioner as its registered agent to receive service of process.
After conducting a hearing on Hobbs' motion to dismiss, the trial court entered an order denying the motion. This appeal followed.
In determining whether long-arm jurisdiction is appropriate in this case, this court is required to conduct a two-part inquiry:
(1) whether the complaint alleges sufficient jurisdictional facts to bring [the plaintiffs'] action within [Florida's long-arm] statute and,
(2) if so, whether sufficient "minimum contacts" [between AFSLIC and the state of Florida] are demonstrated to satisfy due process requirements.
Thompson v. Doe, 596 So.2d 1178, 1180 (Fla. 5th DCA 1992), approved, 620 So.2d 1004 (Fla. 1993). With regard to the first inquiry, the defendant may file an affidavit contesting the jurisdictional facts on which the complaint is based; and, if the defendant does so, the burden shifts to the plaintiff to present affidavits or other competent proof supporting the jurisdictional allegations of the complaint. Unger v. Publisher Entry Service, Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987), rev. denied, 520 So.2d 586 (Fla. 1988).
Hobbs first contends that the evidence presented below established that the trial court did not have jurisdiction over AFSLIC under section 48.193, Florida Statutes (1991). In May 1993, the date the instant action was filed, section 48.193 provided:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
... .
(c) Owning, using, or possessing any real property within this state.
(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.
... .
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
... .
(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
§ 48.193(1), (2), Fla. Stat. (1991).
Hobbs' uncontradicted affidavit effectively refuted any allegation that AFSLIC engaged in an act which would subject it to the court's jurisdiction under section 48.193(1). See, e.g., Georgia Insurers Insolvency Pool v. Brewer, 602 So.2d 1264, 1267-68 (Fla. 1992); Pluess-Staufer Industries v. Rollason Engineering & Manufacturing, Inc., 635 So.2d 1070, 1072 (Fla. 5th DCA 1994); Thompson v. Doe, 596 So.2d 1178, 1180 n. 1 (Fla. 5th DCA 1992), approved, 620 So.2d 1004 (Fla. 1993); Jasper v. Zara, 595 So.2d 1075, 1075-76 (Fla. 2d DCA 1992); Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091-92 (Fla. *1153 3d DCA 1991); MacKenzie Insurance Agencies v. ATF Lines, 550 So.2d 174, 175-76 (Fla. 1st DCA 1989); Newton v. Bryan, 433 So.2d 577, 578-79 (Fla. 5th DCA 1983). Specifically, the affidavit established that AFSLIC neither engaged in business, nor maintained an office, in the state of Florida. See § 48.193(1)(a), Fla. Stat. (1991). AFSLIC did not own or possess real property in Florida, although it did hold a mortgage on certain real property in Orange County. See § 48.193(1)(c), Fla. Stat. (1991).[3] AFSLIC's predecessor had contracted to insure a Florida resident, but the plaintiffs' action against AFSLIC did not arise from this act as required under section 48.193(1). See § 48.193(1)(d), Fla. Stat. (1991). AFSLIC had not entered into any contract which required performance in Florida, and it did not have a contractual relationship with the plaintiffs. Further, AFSLIC did not issue the EXTEND Service Contracts which formed the basis of the plaintiffs' action against AFSLIC, nor was AFSLIC licensed to write such policies. See § 48.193(1)(g), Fla. Stat. (1991).
The affidavit further established that AFSLIC was not engaged in substantial activity within the state of Florida such as to subject AFSLIC to jurisdiction under section 48.193(2). As indicated above, "[a] defendant who is engaged in substantial and not isolated activity within this state, ... is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." § 48.193(2), Fla. Stat. (1991) (emphasis added). Section 48.193(2) requires "continued and systematic activity" on the part of the defendant within the state of Florida, such as "a continued solicitation and procurement of business." Price v. Point Marine, Inc., 610 So.2d 1339, 1341-42 (Fla. 1st DCA 1992) (quoting Spanier v. Suisse-Outremer Reederei A.G., 557 So.2d 83, 83 (Fla. 3d DCA 1990)). "Sporadic activities or visits will not constitute `substantial and not isolated activity'" under section 48.193(2). Price, 610 So.2d at 1341.
Hobbs' uncontradicted affidavit indicated that AFSLIC's sole activity in Florida consisted of (1) holding a mortgage on real property in Orange County, (2) issuing one life insurance policy to a Florida resident (as well as issuing four policies to persons who later moved to Florida), and (3) maintaining a certificate of authority to transact insurance in the state of Florida. See § 624.401, Fla. Stat. (1991). These isolated acts are not sufficiently substantial to subject AFSLIC to the trial court's jurisdiction under section 48.193(2). See, e.g., Georgia Insurers Insolvency Pool v. Brewer, 602 So.2d 1264, 1268 (Fla. 1992); Price v. Point Marine, Inc., 610 So.2d 1339, 1341-42 (Fla. 1st DCA 1992); Jasper v. Zara, 595 So.2d 1075, 1076 (Fla. 2d DCA 1992); Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089, 1091-92 (Fla. 3d DCA 1991); Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087, 1089 (Fla. 3d DCA), rev. denied, 531 So.2d 167 (Fla. 1988).
In opposing AFSLIC's motion to dismiss, the sole evidence presented by the plaintiffs was that, during the years 1981 through 1993 (with the exception of 1991), AFSLIC registered to do business in the state of Florida and that, in doing so, AFSLIC designated the Florida Insurance Commissioner as its registered agent to receive service of process. The plaintiffs suggest that this act, by itself, was sufficient to subject AFSLIC to the jurisdiction of the courts of this state.
In Rose's Stores, Inc. v. Cherry, 526 So.2d 749 (Fla. 5th DCA), rev. denied, 534 So.2d 401 (Fla. 1988), this court held that:
[W]hen a foreign corporation is not qualified to do business in the State of Florida, the requirements of doing business and connexity must be shown to properly allow in personam jurisdiction. In the instant case, pursuant to section 48.091, Florida *1154 Statutes (1985), Rose's Stores, Inc., is qualified to do business in the state... . By having a registered agent in the state, the minimum contacts requirement is met, and connexity need not be shown.
Rose's Stores, 526 So.2d at 752 (footnote omitted).
Despite this broad language, the holding in Rose's Stores does not subject AFSLIC to the jurisdiction of the trial court in this case. In Rose's Stores, as well as in the cases cited therein,[4] proper service was made on the corporation's registered agent pursuant to section 48.081(3) of the Florida Statutes. Section 48.081(3) provides:
As an alternative to all of the foregoing [methods for serving process], process may be served on the agent designated by the corporation under s. 48.091....
§ 48.081(3), Fla. Stat. (1991). In the instant case, process was served on AFSLIC's agent in Missouri, not its registered agent in Florida. Further, section 48.081 specifically provides that it "does not apply to service of process on insurance companies," such as AFSLIC. § 48.081(4), Fla. Stat. (1991).
Although the holding in Rose's Stores does not apply to insurance companies, a separate line of cases has developed which applies the same principle to foreign insurance companies who designate the Florida Insurance Commissioner as their registered agent to receive service of process in Florida. In Confederation of Canada Life Insurance Co. v. Vega Y Arminan, 144 So.2d 805 (Fla. 1962), service was made on the Florida Insurance Commissioner pursuant to section 624.0221 of the Florida Statutes, which required insurance companies applying for authority to transact insurance in this state to appoint the commissioner as their registered agent to receive service of process. Noting that section 624.0221 contemplated service of process on foreign corporations even as to actions arising outside the state, the Florida Supreme Court held:
[A]n action may be properly brought against a foreign corporation which has by registering to do business in this state and by designating the commissioner of insurance as its agent pursuant to [section] 624.0221, ... subjected itself to the "service of all legal process issued against it in any civil action or proceeding in this state."
... .
We therefore conclude ... that subjecting the [insurance company] to service of process and the jurisdiction of the courts of this state does not violate the requirement of constitutional due process in this case.
Confederation of Canada, 144 So.2d at 810. Accord Washington v. Fireman's Fund Insurance Co., 422 So.2d 366 (Fla. 4th DCA 1982) (in reversing order of dismissal on authority of Confederation of Canada, district court held that process was properly and sufficiently perfected under provisions of section 624.422 so as to vest trial court with personal jurisdiction over foreign insurance company). More recently, our supreme court cited Confederation of Canada for the proposition that "connexity was not required to acquire personal jurisdiction over a foreign insurance corporation that qualified to do business in Florida and expressly appointed the Commissioner of Insurance as its agent to receive service of process." White v. Pepsico, Inc., 568 So.2d 886 (Fla. 1990).[5]
In the instant case, however, the plaintiffs cannot avail themselves of this line of authority because the plaintiffs failed to effect service of process in accordance with the applicable statute. Section 624.422 of the Florida Statutes (formerly section 624.0221) provides:

*1155 (1) Each licensed insurer, whether domestic, foreign, or alien, shall be deemed to have appointed the Insurance Commissioner and Treasurer and his successors in office as its attorney to receive service of all legal process issued against it in any civil action or proceeding in this state; and process so served shall be valid and binding upon the insurer.

(2) Prior to its authorization to transact insurance in this state, each insurer shall file with the department designation of the name and address of the person to whom process against it served upon the Insurance Commissioner and Treasurer is to be forwarded. The insurer may change the designation at any time by a new filing.
(3) Service of process upon the Insurance Commissioner and Treasurer as the insurer's attorney pursuant to such an appointment shall be the sole method of service of process upon an authorized domestic, foreign, or alien insurer in this state.
§ 624.422, Fla. Stat. (1991) (emphasis added).[6]
As previously indicated, the plaintiffs failed to serve process on the Florida Insurance Commissioner as AFSLIC's agent, and instead they served AFSLIC's agent in Missouri. Although designating the Commissioner of Insurance as its agent to receive service of process subjects AFSLIC to personal jurisdiction in Florida, process must properly be perfected under the provisions of section 624.422(3) in order to vest the trial court with personal jurisdiction over AFSLIC. See Washington v. Fireman's Fund Insurance Co., 422 So.2d 366, 366 (Fla. 4th DCA 1982); Kentucky Farm Bureau Mutual Insurance Co. v. Mills, 367 So.2d 673, 674 (Fla. 2d DCA), cert. denied, 376 So.2d 74 (Fla. 1979); Kephart v. Pickens, 271 So.2d 163, 164 (Fla. 4th DCA 1972), cert. denied, 276 So.2d 168 (Fla. 1973). In acquiring personal jurisdiction over non-resident defendants pursuant to a state long-arm statute, courts must require strict compliance with the statute's service of process provisions. Tucker v. Dianne Electric, Inc., 389 So.2d 683, 685-86 (Fla. 5th DCA 1980). A plaintiff's compliance with the procedural requirements of one long-arm statute is not sufficient to invoke jurisdiction under another long-arm statute with which the plaintiff has not complied. P.S.R. Associates v. Artcraft-Heath, 364 So.2d 855, 857-58 (Fla. 2d DCA 1978).
In accordance with Confederation of Canada, connexity was not required to acquire personal jurisdiction over AFSLIC because AFSLIC qualified to do business in Florida and expressly appointed the Commissioner of Insurance as its agent to receive service of process. Nevertheless, the trial court in this case erred in denying Hobbs' motion to dismiss because the plaintiffs failed to properly serve the Commissioner of Insurance as required by section 624.422. Although the requirement of minimum contacts is satisfied by an insurance company's act of appointing the commissioner as its agent to receive service of process, service must be completed in accordance with section 624.422 before the statute will subject the insurance company to the jurisdiction of the courts of this state.
Alternatively, the plaintiffs contend that AFSLIC should be subject to the jurisdiction of the courts of this state under a piercing-the-corporate-veil theory. Personal jurisdiction over a resident parent corporation or a resident corporate officer does not necessarily translate into personal jurisdiction over a non-resident subsidiary or wholly-owned corporation. See Woods v. Jorgensen, 522 So.2d 935, 936 (Fla. 1st DCA 1988); McLean Financial Corp. v. Winslow Loudermilk Corp., 509 So.2d 1373, 1374 (Fla. 5th DCA 1987); Mac Millan-Bloedel, Ltd. v. Canada, 391 So.2d 749, 751 (Fla. 5th DCA 1980). An exception arises where the non-resident corporation is merely the alter ego of the resident owner or parent, over whom the court does have *1156 jurisdiction. See Qualley v. International Air Service Co., 595 So.2d 194, 196 (Fla. 3d DCA), cause dismissed, 605 So.2d 1265 (Fla. 1992); Woods v. Jorgensen, 522 So.2d at 937.
In Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla. 1984), the Florida Supreme Court reaffirmed the principle that "the corporate veil may not be pierced absent a showing of improper conduct." Accord Woods v. Jorgensen, 522 So.2d 935, 957 (Fla. 1st DCA 1988). Quoting Advertects, Inc. v. Sawyer Industries, 84 So.2d 21, 23-24 (Fla. 1955), the court stated:
The corporate veil will not be penetrated ... unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them.
Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.
Dania Jai-Alai Palace, 450 So.2d at 1120 (emphasis added).
In their complaint, the plaintiffs asserted that the American Way Group of Companies, which included AFSLIC, was the alter ego of Thomas A. Warmus, a Florida resident, and, further, that the American Way Group had "operated in such a fashion as to ignore and obliterate any separate corporate identities of the member corporations." In Hobbs' affidavit filed in support of his motion to dismiss, Hobbs acknowledged that AFSLIC was wholly owned by American Way Holdings, Inc., a Florida corporation located in Pompano Beach. Hobbs stated, however, that AFSLIC was not a mere instrumentality of the American Way Group of Companies, that AFSLIC's funds were not commingled with funds of its affiliated companies, that it maintained separate bank accounts and financial statements, that it had not represented itself to the public as another company, and that it transacted business in its own name.
Once Hobbs filed his affidavit purporting to negate the factual predicate upon which the plaintiffs' theory of jurisdiction was based, it became incumbent upon the plaintiffs to substantiate the jurisdictional allegations supporting their piercing-the-corporateveil theory. Woods v. Jorgensen, 522 So.2d 935, 936 (Fla. 1st DCA 1988). In this regard, the plaintiffs failed to present evidence contradicting Hobbs' statement that AFSLIC operated independently of the American Way Group of Companies. The deposition of Thomas A. Warmus, provided by the plaintiffs on appeal, merely indicated that Warmus owned and controlled AFSLIC and that he arranged for AFSLIC to loan funds to the plaintiffs.[7] Even if this deposition had been available to the trial court in rendering its decision, the deposition was insufficient to support the plaintiffs' allegations that AFSLIC was the alter ego of Warmus. Without evidence that AFSLIC was formed or used for some illegal, fraudulent, or other unjust purpose, the mere fact of the American Way Group's and Warmus's ownership and control of AFSLIC was insufficient to justify piercing AFSLIC's corporate veil. Dania Jai-Alai *1157 Alai, 450 So.2d at 1120-21. Cf. Woods v. Jorgensen, 522 So.2d at 936 (plaintiff's affidavits asserted that Florida and Delaware corporations wholly owned by defendant were shell corporations without any real assets and were formed to fund or provide financial backing for defendant's real estate venture in Florida).
Hobbs also contends that the trial court erred in ruling that it had jurisdiction to determine the plaintiffs' claims against AFSLIC under the provisions of the Insurers Rehabilitation and Liquidation Act. Specifically, Hobbs contends that, because no ancillary receiver had been appointed in Florida, section 631.171 of the Act required all claims against AFSLIC to be filed before its domiciliary receiver in Missouri.[8]
Florida's legislature enacted the Insurers Rehabilitation and Liquidation Act in 1959 as this state's version of the Uniform Insurers Liquidation Act. Springer v. Colburn, 162 So.2d 513, 515 (Fla. 1964). As the court explained in Florida Insurance Guaranty Ass'n v. Department of Insurance, 400 So.2d 813 (Fla. 1st DCA 1981),
The forced liquidation or reorganization of insurance companies doing business in several states presents unique problems which have been alleviated in some thirty-two states, to some extent, by the adoption in one form or another of the Uniform Insurers Liquidation Act... . The purpose of the Act is to secure equal treatment for all creditors, wherever situated, of defunct or failing insurance companies.
... [T]he vesting of predominant control in the domiciliary state of an ailing or insolvent insurer is the cardinal feature of the act.
FIGA, 400 So.2d at 814-16 (footnote and citations omitted). See also Springer v. Colburn, 162 So.2d at 515; Insurance Commissioner of California v. Department of Insurance, 411 So.2d 269, 272 (Fla. 1st DCA 1982). In accordance with this principle, prior to 1983, section 631.171 required persons with claims against a foreign insurer which had been placed into receivership to file their claims in the foreign insurer's domiciliary state unless an ancillary receiver had been appointed in Florida. See, e.g., Financial International Life Insurance Co. v. Beta Trust Corp., 405 So.2d 306, 308 (Fla. 4th DCA 1981) (citing § 631.171, Fla. Stat. (1979)). But see Colburn v. Highland Realty Co., 153 So.2d 731, 735 (Fla. 2d DCA 1963) (suit for specific performance of contract for sale of Florida realty could properly be maintained against Michigan insurance company notwithstanding Michigan's subsequent appointment of rehabilitator under provisions of Uniform Insurers Liquidation Act).
In 1983, however, Florida's legislature amended section 631.171 to provide:
(1) In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state or with the domiciliary receiver... .
(2) Claims belonging to claimants residing in this state may be proved either in the domiciliary state under the law of that state or in the ancillary proceeding, if any, in this state... .
§ 631.171, Fla. Stat. (1983). Significantly, the 1983 amended statute substituted the term "liquidation proceeding" for the statute's former term of "delinquency proceeding."[9] Under the *1158 Act, delinquency proceedings include liquidation, rehabilitation, reorganization and conservation. § 631.011(5), Fla. Stat. (1993). Thus, in amending the statute, the legislature narrowed the type of proceeding covered under section 631.171 to liquidation proceedings. The current version of section 631.171 also applies only to "a liquidation proceeding." § 631.171, Fla. Stat. (1993).[10]
This interpretation is supported by the decision of Smalls v. Weed, 293 S.C. 364, 360 S.E.2d 531 (Ct.App. 1987), in which the court analyzed virtually identical provisions in South Carolina's version of the Uniform Insurer's Liquidation Act. In that case, a Tennessee rehabilitator similarly contended that the South Carolina court lacked subject matter jurisdiction to hear the insured's claims because no ancillary receiver had been appointed in South Carolina. In rejecting this contention, the South Carolina court gave the statute its plain meaning. Noting that the rehabilitator's insurance company was in rehabilitation proceedings, not liquidation proceedings, the court reasoned:
While "liquidation" contemplates the end of corporate existence, "rehabilitation" involves the continuance of corporate life and activities, and is an effort to restore and reinstate the corporation to its former condition of successful operation and solvency. [Citation omitted]. Where a statute uses a word having a well-recognized meaning in law, the presumption is that the Legislature intended to use the word in that sense. [Citation omitted]. Moreover, where the same word is used more than once in a statute it is presumed to have the same meaning throughout unless a different meaning is necessary to avoid an absurd result. [Citation omitted].
It is apparent that the Act provides for one procedure in actions involving a rehabilitator, and for a different procedure against a liquidator. The Act, moreover, is divided into separate sections concerning grounds for rehabilitation (Section 38-5-2010), grounds for liquidation (Section 38-5-2060), rehabilitation orders (Section 38-5-2020), liquidation orders (Section 38-5-2070), powers and duties of rehabilitator (Section 38-5-2030), and powers of liquidator (Section 38-5-2100).
Smalls v. Weed, 360 S.E.2d at 534.
Florida's Insurers Rehabilitation and Liquidation Act similarly distinguishes rehabilitation proceedings from liquidation proceedings. For example, the Act is divided into separate sections concerning grounds for rehabilitation (section 631.051), grounds for liquidation (section 631.061), rehabilitation orders (section 631.101), and liquidation orders (section 631.111). Additionally, section 631.071 authorizes the appointment of an ancillary receiver to conserve the assets of a foreign insurer if grounds for rehabilitation or liquidation exist, while section 631.091 authorizes the appointment of an ancillary receiver to liquidate the assets of a foreign insurer only when a receiver has been appointed in the domiciliary state "for the purpose of liquidating the business of such insurer." Florida Insurance Guaranty Ass'n v. Department of Insurance, 400 So.2d 813, 817 (Fla. 1st DCA 1981).
Under the foregoing analysis, section 631.171 arguably would have divested the trial *1159 court of jurisdiction if Hobbs had been appointed for the purpose of liquidating AFSLIC; however, it is undisputed that Hobbs was appointed for the purpose of rehabilitating AFSLIC. The trial court, therefore, did not err in denying Hobbs' motion to dismiss under section 631.171 of the Insurers Rehabilitation and Liquidation Act.[11]
Accordingly, we vacate the trial court's order denying Hobbs' motion to dismiss for lack of personal jurisdiction and remand this cause for further proceedings consistent with this opinion. This decision is without prejudice to the plaintiffs' right to proceed to obtain service on AFSLIC in the manner provided by law.
VACATED and REMANDED for further proceedings.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] Pursuant to rule 9.130(a)(3)(C)(i) of the Florida Rules of Appellate Procedure, this court has jurisdiction to review the trial court's nonfinal order to the extent that the order determined the trial court's personal jurisdiction over AFSLIC.
[2] §§ 631.001  399, Fla. Stat. (1991).
[3] After the plaintiffs' action accrued, the legislature amended section 48.193(1)(c), effective October 1, 1993, to subject a defendant to jurisdiction if a plaintiff's cause of action arose from the defendant "[o]wning, using, possessing, or holding a mortgage or other lien on any real property within this state." § 48.193(1)(c), Fla. Stat. (1993) (emphasis on amendment). This amendment may not, however, be applied retroactively to subject AFSLIC to the jurisdiction of the courts of this state. Oldt v. Sides, 573 So.2d 440, 441 (Fla. 2d DCA 1991); Utility Trailer Manufacturing Co. v. Cornett, 526 So.2d 1064, 1068 (Fla. 1st DCA), rev. denied, 534 So.2d 398 (Fla. 1988); Windels, Marx, Davies & Ives v. Solitron Devices, Inc., 510 So.2d 1177, 1179 (Fla. 4th DCA 1987); American Motors Corp. v. Abrahantes, 474 So.2d 271, 274 (Fla. 3d DCA 1985).
[4] See Ranger Nationwide, Inc. v. Cook, 519 So.2d 1087 (Fla. 3d DCA), rev. denied, 531 So.2d 167 (Fla. 1988); Dombroff v. Eagle-Picher Industries, 450 So.2d 923 (Fla. 3d DCA), rev. denied, 458 So.2d 272 (Fla. 1984); Junction Bit & Tool Co. v. Institutional Mortgage Co., 240 So.2d 879 (Fla. 4th DCA 1970). See also Cassidy v. Ice Queen International, Inc., 390 So.2d 465 (Fla. 3d DCA 1980).
[5] In Pepsico, the supreme court dealt with the analogous question of whether connexity was required under section 48.081(3), relative to service of process on a foreign corporation's registered agent. Like the court in Rose's Stores, the supreme court held that section 48.081(3) did not require connexity. The supreme court specifically noted that no due process issue existed in Pepsico, presumably because Pepsico's minimum contacts with the state of Florida were not questioned.
[6] Section 624.422(1) formerly provided that the appointment would "remain in effect as long as there is outstanding in this state any obligation or liability of the insurer resulting from its insurance transactions therein." § 624.422(1), Fla. Stat. (1981). See Confederation of Canada Life Insurance Co. v. Vega Y Arminan, 144 So.2d 805 (Fla. 1962); Kentucky Farm Bureau Mutual Insurance Co. v. Mills, 367 So.2d 673 (Fla. 2d DCA), cert. denied, 376 So.2d 74 (Fla. 1979). The legislature deleted this language from section 624.422(1), effective in 1982. § 624.422(1), Fla. Stat. (Supp. 1982).
[7] The plaintiffs provided a portion of the November 2, 1993, deposition of Thomas A. Warmus in their appendix on appeal. This deposition did not exist on October 25, 1993, when the trial court orally ruled on Hobbs' motion to dismiss at the conclusion of a hearing held on the motion. Further, there is no evidence to suggest that the trial court considered the deposition when it signed its written order denying the motion to dismiss on November 9, 1993.

In his deposition, Warmus stated that he was "the hundred percent shareholder and the president" of the American Way Group of Companies, of which AFSLIC was a member. Warmus also "ran the companies." At the direction of Warmus, AFSLIC and at least two other members of the American Way Group loaned funds to the plaintiffs. In return, AFSLIC and the other members accepted a security interest in certain real estate which was evidenced by a mortgage.
[8] The trial court's order denying Hobbs' motion to dismiss indicates that the court considered this issue to be one of subject-matter jurisdiction. Rule 9.130(a) does not provide for review of a non-final order denying a motion to dismiss for lack of subject-matter (as opposed to personal) jurisdiction. Instead, such orders are reviewable by petition for a writ of prohibition. See Walker v. Garrison, 610 So.2d 716, 718 (Fla. 4th DCA 1992); School Board of Marion County v. Angel, 404 So.2d 359, 361 (Fla. 5th DCA 1981).

We question the trial court's characterization of this issue as one of subject-matter jurisdiction. The jurisdictional provisions of the Insurers Rehabilitation and Liquidation Act appear to be more in the nature of venue. See, e.g., Bedingfield v. Bedingfield, 417 So.2d 1047, 1049 (Fla. 4th DCA 1982) (discussing jurisdictional provisions of Uniform Child Custody Jurisdiction Act), rev. dismissed, 427 So.2d 736 (Fla. 1983). See also State ex rel. McGreevy v. Dowling, 223 So.2d 89 (Fla. 3d DCA 1969). Nevertheless, we may review this issue by invoking our certiorari jurisdiction, inasmuch as rule 9.130(a)(3)(A) "apparently applies only to venue within the State of Florida." Bedingfield, 417 So.2d at 1048.
[9] The comparable Missouri statute, on the other hand, still refers to "delinquency proceeding." Mo. Ann. Stat. § 375.966 (Vernon 1994). We note that the various amendments to the Insurers Rehabilitation and Liquidation Act passed by Florida's legislature since 1959 may have undermined the Act's goal of uniformity.
[10] Section 631.171, Florida Statutes (1993), provides:

(1) In a liquidation proceeding in a reciprocal state against an insurer domiciled in that state, if a notice to file claims has been issued by the Florida receiver pursuant to s. 631.181(3), claimants against the insurer who reside within this state may file claims either with the ancillary receiver, if any, in this state or with the domiciliary receiver....
(2) If a notice to file claims has been issued by the Florida receiver pursuant to s. 631.181(3), claims belonging to claimants residing in this state may be proved either in the domiciliary state under the law of that state or in the ancillary proceeding, if any, in this state... .
(3) If a notice to file claims has not been issued by the Florida receiver pursuant to s. 631.181(3), claims shall be proved and filed before the domiciliary receiver.
[11] Although section 631.171 does not prevent the plaintiffs from bringing this action against AFSLIC, section 631.201 does prevent the plaintiffs, during the pendency of AFSLIC's rehabilitation proceeding in Missouri, from bringing any "action or proceeding in the nature of an attachment, garnishment, or execution ... in the courts of this state against [AFSLIC] or its assets." § 631.201, Fla. Stat. (1993). Unlike section 631.171, section 631.201's prohibition applies to all delinquency proceedings, not just liquidation proceedings. Id. See Springer v. Colburn, 162 So.2d 513, 514 (Fla. 1964). See also Nova Insurance Group, Inc. v. Department of Insurance, 606 So.2d 429 (Fla. 1st DCA 1992) (considering preclusive effects of §§ 631.152  .154, Fla. Stat. (1991)).