195 N.J. Super. 274 (1984)
478 A.2d 1243
JOSEPH F. MURPHY, COMMISSIONER OF INSURANCE, PLAINTIFF,
v.
AMBASSADOR INSURANCE COMPANY, AN INSURANCE CORPORATION OF THE STATE OF VERMONT, ARNOLD CHAIT, W. EDSON MCKEE, DORIS J. CHAIT, RICHARD A. TAFRO, RICHARD C. KEMP, DANIEL J. LYNCH, HARVEY N. GUIS, EDWARD C. CHAIT, HAROLD M. EDWARDS, ELLIOT DOLINGER, JOEL M. COOPER AND DANIEL HIRSCH, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Hudson County.
Decided April 11, 1984.
*276 John J. Hayden, for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Eugene M. Haring, for defendants (McCarter and English, attorneys).
TARLETON, J.S.C.
In this delinquency action instituted pursuant to the Uniform Insurers Liquidation Act, N.J.S.A. 17:30C-1 et seq., the Commissioner of Insurance of New Jersey has been appointed ancillary receiver of Ambassador Insurance Company. His application for possession of Ambassador's New Jersey assets of approximately $100,000,000 is opposed by the domiciliary receiver appointed by the court of the state in which Ambassador was incorporated.
Ambassador is wholly owned by the Ambassador Group, Inc., a Delaware corporation, which also owns Budget Payment Plan Inc., a premium finance company, and Surplus Lines Associates, a surplus line insurance broker. Ambassador was incorporated in the State of Vermont on March 16, 1965 as a stock property and liability insurer. It qualified as an eligible surplus lines' insurer in New Jersey on December 14, 1967 in *277 accordance with N.J.S.A. 17:22-6.45. At that time Ambassador was required, among other things, to maintain a deposit of $100,000 with the Commissioner "... in trust for all United States policyholders...." In 1983 this deposit was increased to $600,000.
For the calendar year ending December 31, 1982 Ambassador wrote $48,630,987 in direct premiums throughout the United States. Of this amount, approximately $11.8 was written in New Jersey, almost three times as much as it wrote in any other state. For the period ending September 30, 1983 Ambassador wrote approximately $48,000,000 in direct premiums throughout the United States. Of this amount $8.3 million was written in New Jersey, almost $3,000,000 more than it wrote in any other state.
As of April 19, 1984, 1,779 claims had been filed and 1,270 cases were pending in New Jersey against Ambassador's insureds. Seven thousand ninety four (7,094) claims had been filed and 4,852 cases were pending throughout the United States against Ambassador's insureds.
Substantially all of Ambassador's assets are located in New Jersey. These consist primarily of low yield, long term bonds with a statutory (or book) value of $100,000,000 and a market value of $80,000,000.
Commissioner Murphy's action to be appointed ancillary receiver was based upon delinquency proceedings instituted on November 10, 1983 in Vermont by its Insurance Commissioner, George A. Chaffee. On that date Chaffee was appointed "Receiver for the purposes of rehabilitation."
In pertinent part this order provided:
(1) The Commissioner of Banking and Insurance of the State of Vermont (hereafter called the `Commissioner') shall be appointed Receiver by this Court to take possession of the property of Ambassador, wherever situated, and conduct the affairs of Ambassador, subject to the supervision of this Court, for the purpose of the rehabilitation of Ambassador.
Commissioner Chaffee selected George K. Bernstein as his agent to function as Ambassador's chief executive officer. *278 Bernstein assembled a rehabilitation team and took possession and control of Ambassador's New Jersey assets and its administrative offices in North Bergen, New Jersey, on November 10 or 11, 1983. Since that date the rehabilitation team has operated the insurance company after having effectuated a series of layoffs and economies.
The evaluation process of whether Commissioner Chaffee would recommend that Ambassador be rehabilitated or liquidated was hampered by the general disorganization and, in some cases, non-existence of Ambassador's records and the intricate relationship between Ambassador and its affiliates. Until the rehabilitation proceeding was commenced, operation of Ambassador's various corporate entities was intermingled. The relationship between the Ambassador Group and Horizon Insurance Company, a New York domiciled insurer wholly owned by the Group, provided an additional complexity because the New York Insurance Department has applied for an order of rehabilitation against Horizon. In addition, ancillary receivers have been appointed in Arizona and Florida.
The November 10, 1983 order of the Vermont Superior Court called for Commissioner Chaffee to submit a plan for rehabilitation or liquidation by March 9, 1984. This date was extended and on March 30, 1984, Commissioner Chaffee submitted a detailed report to the Vermont Superior Court recommending liquidation. Using conservative calculations, he concluded that as of November 30, 1983 Ambassador's liabilities exceeded its assets by $43,107,198. Commissioner Chaffee recommended that Ambassador be liquidated because it cannot be successfully rehabilitated and is unsafe to remain in business. The Vermont Superior Court has scheduled a hearing for May 14, 1984 on this plan.
Ambassador's liquidation will have a particularly devastating impact on New Jersey claimants and policyholders because the New Jersey Property Liability Guarantee Association Act, N.J.S.A. 17:30A-1 et seq., does not afford coverage for insolvent *279 surplus lines insurers. Railroad Roofing & Building Supply Co., Inc. v. Financial Fire & Casualty Co., 85 N.J. 384 (1981); also see N.J.S.A. 17:30A-5(e) & (f) which, as of February 22, 1980, expressly excludes surplus lines insurers.
A temporary restraining order was entered in this action enjoining the dissipation of Ambassador's assets and the commencement or prosecution of any actions against it. Commissioner Murphy was appointed ancillary receiver but his application for possession of Ambassador's New Jersey assets was deferred pending a plenary hearing.
Temporary restraining orders were also entered enjoining the prosecution of any litigation involving Ambassador's insureds. This action was taken to afford the rehabilitator a limited time period within which to assess Ambassador's financial condition without being deterred from this task to evaluate claims, negotiate settlements and make litigation decisions on hundreds of cases. Various attorneys were designated to represent classes of litigants whose actions were stayed and a hearing was conducted on the propriety and scope of the temporary restraints. On March 7, 1984 the temporary restraints were vacated in progressive stages so that as of April 12, 1984 all such restraints were lifted.
At issue is whether the ancillary or domiciliary receiver is entitled to possession of Ambassador's New Jersey assets and the balances held by the insurer's agents and brokers, approximating $1,000,000. The latter dispute arose from a November 14, 1983 letter from the New Jersey Insurance Department to Ambassador's agents and brokers advising them that they should withhold settlement of balances owed Ambassador until the future plan of the insurer was determined.
Both commissioners agree that the domiciliary receiver has the sole responsibility to operate Ambassador, make policy decisions on the conduct of the delinquency proceedings and fashion a plan and recommendation for submission to the Vermont Superior Court on whether Ambassador should be *280 rehabilitated or liquidated. The domiciliary receiver maintains that he is entitled to Ambassador's assets from the time of his appointment to the time of his discharge, and the ancillary receiver claims the right to possess Ambassador's New Jersey assets until a plan is approved by the Vermont Court.
Summarized, the ancillary receiver claims the right to "conserve" Ambassador's assets, to disburse the assets "as needed" by either receiver and the opportunity to "assist" the domiciliary receiver in rehabilitating or conserving the assets in the absence of instructions from the domiciliary state.
The ancillary receiver relies upon N.J.S.A. 17:30C-11(b), 17:30C-13(a) and 17:30C-16(b) & (c) to sustain his right to possession. These provide:
17:30C-11. Grounds for conservation  foreign insurers
The commissioner may apply for an order directing him to conserve the assets within this State of a foreign insurer upon any one or more of the following grounds:
a. Upon any of the grounds specified in section 6, and in section 8b.
b. That its property has been sequestrated in its domiciliary sovereignty or in any other sovereignty.
17:30C-13. Conservation or ancillary receivership  foreign insurers
a. An order to conserve the assets of a foreign insurer shall direct the commissioner forthwith to take possession of the property of the insurer within this State and to conserve it, subject to the further direction of the court.
b. Whenever a domiciliary receiver is appointed for any such insurer in its domiciliary state the court shall, on application of the commissioner, appoint the commissioner as the ancillary receiver in this State.
c. An order to liquidate the assets in this State of a foreign insurer shall require the commissioner forthwith to take possession of the property of the insurer within this State and to liquidate it subject to the orders of the court and with due regard to the rights and powers of the domiciliary receiver, as provided in this act.
17:30C-16. Conduct of delinquency proceedings  foreign and alien insurers
a. Whenever under this act an ancillary receiver is to be appointed in delinquency proceedings for an insurer not domiciled in this State, the court shall appoint the commissioner as ancillary receiver. The commissioner shall file a petition requesting the appointment on the grounds set forth in section 13b. of this act:
(1) If he finds that there are sufficient assets of the insurer located in this State to justify the appointment of an ancillary receiver; or

*281 (2) If 10 or more persons resident in this State having claims against such insurer file a petition with the commissioner requesting the appointment of such ancillary receiver.
b. The domiciliary receiver for the purpose of liquidating an insurer domiciled in a reciprocal state shall be vested by operation of law with the title to all of the property, contracts and rights of action, and all of the books and records of the insurer found in this State. He shall also be entitled to recover the other assets of the insurer located in this State, except that upon the appointment of an ancillary receiver in this State, the ancillary receiver shall during the ancillary receivership proceedings have the sole right to recover such other assets. The ancillary receiver shall, as soon as practicable, liquidate from their respective securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceedings in this State, and shall pay the necessary expenses of the proceedings. All remaining assets he shall promptly transfer to the domiciliary receiver. Subject to the foregoing provisions, the ancillary receiver and his deputies shall have the same powers and be subject to the same duties with respect to the administration of such assets as a receiver of an insurer domiciled in this State.
c. The domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this State to recover any assets of such insurer to which he may be entitled under the laws of this State.
If the objective of the Uniform Act is to be achieved, I conclude that the domiciliary receiver is entitled to possession of Ambassador's assets wherever situate. This result will centralize the management of the delinquency proceeding in one state, eliminate confusion over title and right to possession of the impaired insurer's assets and best achieve the objectives sought by the Uniform Act and its New Jersey and Vermont counterparts.
While I do not question the ancillary receiver's bona fides or his belief that he is acting in the best interests of New Jersey claimants and policyholders, I find that his interpretation of his role as ancillary receiver is based upon a misconception of the Uniform Law and the legislation enacted in New Jersey and Vermont.
The Uniform Law resulted from the 1939 National Conference of Insurance Commissioners (NAIC). At that meeting NAIC adopted the Uniform Insurers Liquidation Act to reduce the conflicts and difficulties created by the liquidation of multistate insurance companies. One such difficulty or "embarrassment" *282 enumerated in the prefatory note accompanying the Act is typified by the present dispute between the New Jersey and Vermont Insurance Commissioners.
I find unpersuasive the ancillary receiver's reliance upon N.J.S.A. 17:30C-11(b), 17:30C-13(a) and 17:30C-16(b) & (c). A review of the Uniform Act and New Jersey's version of it discloses that N.J.S.A. 17:30C-11(b) and 17:30C-13(a) are not part of the Uniform Act. Thus, if any provisions of our legislation are in conflict with the Uniform Act, the Uniform Act controls. N.J.S.A. 17:30C-23(b).
In my view the ancillary receiver's possession of Ambassador's New Jersey assets would lead to a result in conflict with the fundamental purpose for which the Uniform Act and our legislation was enacted. I decline to reach such an anomalous result. New Jersey Builders v. Blair, 60 N.J. 330, 338 (1972); Union Cty. Bd. of Freeholders v. Union Cty. Park Comm., 41 N.J. 333, 341 (1964); Robson v. Rodriquez, 26 N.J. 517, 528 (1958); Sandler v. Springfield Tp. Bd. of Adjustment, 113 N.J. Super. 333, 345 (App.Div. 1971); New Capital Bar and Grill Corp. v. Dept. of Employment Security, 25 N.J. 155, 169 (1957).
Considering the underlying background and objectives of this legislation, I conclude that the construction to be accorded it should be governed by the "commonsense of the situation," Jersey City Chap. Prop. Owners v. City Council, 55 N.J. 86, 100 (1969) and that the "internal sense of the act" should control. San-Lan Builders Inc. v. Baxendale, 28 N.J. 148, 155 (1958).
In light of the foregoing, I conclude that N.J.S.A. 17:30C-11(b), 17:30C-13(a) and 17:30C-16(b) & (c) do not sustain the ancillary receiver's position. Ambassador's property has not been "sequestered" in Vermont as that term is used in N.J.S.A. 17:30C-11(b); rather, an order of rehabilitation has been entered in that state. Since Commissioner Chaffee has *283 been appointed domiciliary receiver by the Vermont Court, I find that N.J.S.A. 17:30C-13(b) applies rather than ¶ (a) thereof. In addition, to the extent that N.J.S.A. 17:30C-13(a) conflicts with § 3(2) of the Uniform Act, it must yield to the Uniform Act which essentially is in accord with ¶ (b).
Likewise I conclude that the ancillary receiver's dependence upon N.J.S.A. 17:30C-16(b) & (c) is misplaced and does not derogate from the conclusion that the domiciliary receiver should possess Ambassador's New Jersey assets. I reject as unsound the ancillary receiver's position that an exception to the ordinary rule of possession by the domiciliary receiver arises during the period from appointment by the domiciliary state court to approval of a plan for rehabilitation or liquidation or because of the anomalies of this case (the insurer's principal place of business and virtually all of its assets in a non-domiciliary state). I conclude that possession of Ambassador's New Jersey assets by the ancillary receiver will impede the implementation of any plan approved by the Vermont Superior Court and will foster disputes rather than encourage cooperation by the states within which the impaired insurer transacts business.
I further find that "in substance and effect" the provisions of the Uniform Insurers Liquidation Act as defined in N.J.S.A. 17:30C-23 are in force in Vermont. N.J.S.A. 17:30C-1(f). In reaching this conclusion, I note that New Jersey and Vermont are members of NAIC and rely upon the explicit declarations of intent appearing in the Vermont Act. Vt. Stat. Ann. tit. 8 § 3591 et seq.
The ancillary receiver's contention that Vermont's differing treatment of preferences, Vt. Stat. Ann. tit. 8 § 3595(a)(1) & (2), mandates against finding that it is a "reciprocal state" is without merit. Considering the November 10, 1983 order of the Vermont Superior Court, Vt. Stat. Ann. tit. 8 §§ 3591 and 3593, and N.J.S.A. 17:30C-21(b) and 17:30C-22, I find this divergence is not of sufficient import to detract from the conclusion that Vermont is a "reciprocal state." Any apprehension Commissioner *284 Murphy may have that New Jersey claimants and policyholders will be given varying treatment from Vermont's is without factual or legal support. Such concern is dispelled by Vt. Stat. Ann. tit. 8 §§ 3591, 3593, the Uniform Act and the unequivocal testimony of Commissioner Chaffee and members of the rehabilitation team.
Vermont clearly and unmistakenly requires: "... uniform and equal treatment irrespective of residence or place of the acts or contracts upon which their claims are based...." Vt. Stat. Ann. tit. 8 § 3591. If Vermont were deemed not to be a "reciprocal state," I would nevertheless conclude that the November 10, 1983 order of the Vermont Superior Court should be given full faith and credit and, further, that the demands of justice dictate such a result. Janak v. Allstate Insurance Co., 319 F. Supp. 215 (W.D.Wis. 1970).
While not directly on point (since it dealt with the liquidation of an insolvent carrier on the issue of whether claims could be prosecuted against it in a jurisdiction where no ancillary receiver was appointed and was decided one year before the adoption of the Uniform Act), Motlow v. Southern Holding and Securities Corp., 95 F.2d 721 (8th Cir.1938) is instructive. There the court stated:
... it is essential that the title, custody and control of the assets be entrusted to a single management under the supervision of one court. Hence other courts, except when called upon by the court of primary jurisdiction for assistance, are excluded from participation. [Id. at 725-26.]
Also see Arroyo v. Chesapeake Ins. Co., 209 Pa.Super. 174, 224 A.2d 101 (Pa. Super. Ct. 1966); Ballesteros v. New Jersey Property Liability Insurance Guaranty Ass'n., 530 F. Supp. 1367 (D.N.J. 1982); Mathias v. Lennon, 474 F. Supp. 949 (S.D.N.Y. 1979); Levy v. Lewis, 635 F.2d 960 (2d Cir.1980); G.C. Murphy v. Reserve Insurance Co., 54 N.Y.2d 69, 444 N.Y.S.2d 592, 429 N.E.2d 111 (N.Y. 1981); Florida Insurance Guarantee Ass'n. Inc. v. Florida, 400 So.2d 813 (Fla. Dist. Ct. App. 1981); Kelly v. Overseas Investors, Inc., 264 N.Y.S.2d 586 (N.Y.App. *285 Div. 1965), rev'd 18 N.Y.2d 622, 272 N.Y.S.2d 773, 219 N.E.2d 288 (N.Y. 1966).
In view of the foregoing I conclude that Commissioner Chaffee as domiciliary receiver is entitled to Ambassador's New Jersey assets and is also entitled to the outstanding balances being held by the impaired insurer's agents and brokers.