**In re LIFECO INVESTMENT GROUP, INC., Debtor.**

**Bankruptcy No. 94–547–PJW.**

United States Bankruptcy Court, D. Delaware.

Sept. 13, 1994.

Order Denying Motion to Alter or Amend Oct. 12, 1994.

James L. Patton, Jr., S. David Peress, Brendan L. Shannon, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for debtor.

David B. Stratton, David M. Fournier, Pepper, Hamilton & Scheetz, Wilmington, DE, Ronald A. Mowrey, Ronald A. Mowrey, P.A., Tallahassee, FL, for Florida Dept. of Ins.

Stephen E. Herrmann, Deborah E. Spivack, Richards, Layton & Finger, Wilmington, DE, for Nat. Heritage Life Ins. Co.

PETER J. WALSH, Bankruptcy Judge.

## INTRODUCTION

The Florida Department of Insurance has filed two motions in this Chapter 11 case. One requests an order authorizing a Rule 2004 examination of specified officers and directors of the debtor; the other requests an order dismissing the case or, in the alternative, transferring venue to Florida. The debtor and its wholly-owned insurance company subsidiary, acting through the Delaware Department of Insurance, oppose both motions. The parties have submitted extensive memoranda and affidavits on the motions, and the court heard extensive oral argument on the matter.

For the reasons set forth below, I find that the movant does not have standing to bring either motion because it is not a party in interest within the contemplation of § 1109 of the Bankruptcy Code. 11 U.S.C. § 1109. Consequently, I deny both motions.

## FACTS

On June 6, 1994, Lifeco Investment Group, Inc. ("Lifeco") filed for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.[1] Lifeco continues to operate its business and manage its property as a debtor-in-possession pursuant to Code §§ 1107(a) and 1108.

Lifeco is a holding company incorporated in Florida. Its primary asset is National Heritage Life Insurance Company ("National"), a life insurance company incorporated in Delaware. Lifeco's selection of Delaware venue, pursuant to 28 U.S.C. § 1408, rests on the facts that National is a Delaware corporation, which is subject to the regulation of the Delaware Department of Insurance (the "Delaware Department") and which is currently in a rehabilitation proceeding in the Delaware Court of Chancery pursuant to 18 Del.C. § 5901 et seq.

---

1. Sections of title 11 are hereinafter referred to as "Code § ___."

The rehabilitation of National commenced on May 25, 1994 when the Delaware Insurance Commissioner applied for and received a Rehabilitation and Injunction Order (the "Rehabilitation Order") appointing her domiciliary receiver of National. Pursuant to the Rehabilitation Order, the Delaware Department became responsible for conducting the business of National. This responsibility includes, but is not limited to, taking exclusive possession and control of all right, title and interest in all property of National; examining and investigating National's affairs; and taking "such actions as the nature of this cause and the interest of the policyholders, creditors and stockholders of National Heritage and the public may require". Rehabilitation Order ¶ 1, 2 at 1–2. A domiciliary receiver's powers are authorized by the Delaware Insurance Code which provides that "[a]n order to rehabilitate a domestic insurer shall direct the Commissioner forthwith to take possession of the property of the insurer and to conduct the business thereof and to take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the court may direct". 18 *Del.C.* § 5910(a).

Both Lifeco and National have their principal places of business in Orlando, Florida. Most of Lifeco's 20 largest creditors are located in Florida, and its largest creditor is National, which holds a claim of approximately $8,000,000.[2] While National sells insurance in many states, its income from Florida residents is larger than that of any other state, representing 35% of its annual premium income. Its annual premium income from Delaware residents is only .5% of the total. According to the Florida Department of Insurance ("the Florida Department"), National is insolvent by $161,000,000 and the Florida Life and Health Insurance Guarantee Association will have to contribute an estimated $160,000,000 in order to meet the shortfall to pay Florida policyholders. The

Florida Department therefore has an interest in the affairs of National.

National's principal assets are mortgages and mortgage backed bonds. The mortgages are secured by properties located throughout the United States. Very few of the mortgages are with respect to Florida properties. The mortgages are being serviced by several different companies located in states other than Delaware and Florida.

On May 26, 1994, one day after entry of the Rehabilitation Order, the Circuit Court of Leon County, Florida appointed the Florida Department as ancillary receiver of National (the "First Ancillary Order"). Lifeco filed its Chapter 11 petition in this court on June 6, 1994. On June 22, 1994 the Florida Department obtained an order from the Leon County Circuit Court authorizing and directing it, as ancillary receiver, to pursue causes of action and take all necessary action in this bankruptcy case as a creditor of Lifeco to protect the interest of Florida policy holders and claimants (the "Second Ancillary Order"). The Florida Department claims that it sought the Second Ancillary Order at the behest of the Delaware Department. The Delaware Department denies making such request.

The Florida Department asserts that it has standing to argue these motions because (a) it is a creditor of Lifeco by virtue of being the ancillary receiver of National, and (b) it has a significant economic and regulatory stake in this Chapter 11 case. Lifeco and the Delaware Department argue that (a) pursuant to the Rehabilitation Order the Delaware Department, as domiciliary receiver, holds title to National's claim against Lifeco, and (b) the Florida Department's regulatory interest in National's rehabilitation is too remote to give it standing in Lifeco's bankruptcy case.

## DISCUSSION

■ A Rule 2004 examination can be ordered "on motion of any party in interest."

---

2. The $8,000,000 claim arises out of certain intercompany transactions between Lifeco and National. National may have other claims against Lifeco. For example, it appears that National is a guarantor on a Lifeco bank obligation. If the bank were to enforce the guarantee obligation,

National would have a subrogated claim against Lifeco. Whatever the nature and extent of any additional claims National may have against Lifeco it does not affect the determination I make here.

Fed.R.Bankr.P. 2004. Similarly, a properly filed case can be dismissed or transferred to another district "on timely motion of a party in interest." Fed.R.Bankr.P. 1014(a)(1). Code § 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue" in a Chapter 11 case. For the following reasons, I find that the Florida Department, as ancillary receiver, is not "a party in interest" in Lifeco's Chapter 11 case and therefore does not have standing to bring either a Rule 2004 motion or a motion to change venue.

Both receivers are involved in the affairs of National pursuant to the Uniform Insurers Liquidation Act (the "Uniform Act") as adopted by 32 states, including Delaware and Florida. There are minor variations between the Delaware and Florida versions of the Uniform Act, but for purposes here they are identical.[3] There are two important features of the Uniform Act: (1) where an insurer is in a rehabilitation or liquidation proceeding the department of insurance of the state in which the insurer is domiciled, i.e., incorporated, has paramount authority and control, and (2) the concept of comity is accorded to "reciprocal" states, i.e., states which have adopted the Uniform Act. The states of Delaware and Florida are reciprocal states with respect to each other under their respective versions of the Uniform Act.

In one of its memoranda, the Florida Department argues "the Uniform law will determine the rights and duties of the [Delaware Department] and the [Florida Department] as domiciliary and ancillary receivers of National Heritage." I agree, and based on the applicable provisions and the general scheme of the Uniform Act, I conclude that as ancillary receiver the Florida Department does not have standing in Lifeco's Chapter 11 case.

The Uniform Act is not a model of clarity. Indeed, except for those who may be steeped in its genesis and application, I suspect that others share my view that many of its provisions are obtuse and confusing. Nevertheless, I will attempt to articulate my discernment of the provisions applicable to the issue before me.

The Delaware Department commenced a "delinquency proceeding"[4] with respect to National for the purpose of rehabilitation. The Delaware Act provides:

> An order to rehabilitate a domestic insurer shall direct the Commissioner forthwith to take possession of the property of the insurer and to conduct the business thereof and to take such steps toward removal of the causes and conditions which have made rehabilitation necessary as the court may direct.

18 *Del.C.* § 5910(a). In pertinent part, § 5913 of the Delaware Act provides:

> (a) ... The court shall order the Commissioner forthwith to take possession of the assets of the insurer and to administer the same under the orders of the court.
>
> (b) As a domiciliary receiver, the Commissioner shall be vested by operation of law with the title to all of the property, contracts and rights of action and all of the books and records of the insurer, wherever located, as of the date of entry of the order directing him to rehabilitate or liquidate a domestic insurer or to liquidate the United States branch of an alien insurer domiciled in this State, and he shall have the right to recover the same and reduce the same to possession, except that ancillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which are herein prescribed for ancillary receivers appointed in this State as to assets located in this State.

> \*   \*   \*   \*   \*   \*

---

**3.** Unless otherwise indicated, every applicable provision of the Delaware Act has an identical provision in the Florida Act, and vice versa.

**4.** Section 5901(3) of the Delaware Act defines a delinquency proceeding as "any proceeding com-

menced against an insurer pursuant to this chapter for the purpose of liquidating, rehabilitating, reorganizing or conserving such insurer." 18 *Del.C.* § 5901(3).

(e) Upon taking possession of the assets of an insurer, the domiciliary receiver shall, subject to the direction of the court, immediately proceed to conduct the business of the insurer or to take such steps as are authorized by this chapter for the purpose of rehabilitating, liquidating or conserving the affairs or assets of the insurer.

18 *Del.C.* § 5913. Thus, pursuant to §§ 5910 and 5913 the Rehabilitation Order provides:

[T]he Commissioner shall forthwith *conduct the business* of National Heritage pursuant to the terms of this Order and *take exclusive possession* and control of and be *vested with all right, title and interest* in, of or to *the property of National Heritage* including, without limitation, all of National Heritage's assets, contracts, *rights of action,* books, records, bank accounts, certificates of deposit, collateral securing obligations to, or for the benefit of, National Heritage or any trustee, bailee or any agent acting for, or on behalf of, National Heritage (collectively, the "Trustees"), securities or other funds, and *all real or personal property* of any nature of National Heritage including, without limitation, furniture, fixtures and office supplies, *wherever located,* and including such property of National Heritage or collateral securing obligations to, or for the benefit of, National Heritage or any Trustee thereof that may be discovered hereafter, and all proceeds of or accessions to any of the foregoing, wherever located, in the possession, custody or control of National Heritage or any Trustee therefor (collectively, the "Assets").

\* \* \* \* \* \*

The Commissioner's right, title and interest in and to the Assets shall continue until further order of the Court and she is hereby *authorized to deal with the Assets including,* without limitation, *the right to sue and defend for the Company,* or for the benefit of the Company's policyholders, stockholder and creditors, in the courts and tribunals, agencies or arbitration panels for this State and other states in her name as the Commissioner of Insurance of the State of Delaware, or in the name of

National Heritage Life Insurance Company.

Rehabilitation and Injunction Order ¶¶ 1 and 3, at 1–2 (emphasis added). By reason of the Rehabilitation Order, therefore, the Delaware Department, as domiciliary receiver, has the exclusive right to deal with National's assets, including its $8,000,000 claim against Lifeco, for the benefit of National's policyholders, stockholders and creditors.

Section 5913(b) of the Delaware Act carves out an exception to the domiciliary receiver's powers for ancillary receivers. It provides:

[A]ncillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which are herein prescribed for ancillary receivers appointed in this State as to assets located in this State.

18 *Del.C.* § 5913(b) (1993). The Florida Act contains a similar provision in its version of the Uniform Act. *See* Fla.Stat.Ann. ch. 631.141(2) (West 1994). According to Lifeco and the Delaware Department, one must look to § 5914 of the Delaware Act and/or § 631.152 of the Florida Act to determine these rights and powers of the ancillary receiver. Section 631.152 of the Florida Act provides:

(1) Whenever under this chapter an ancillary receiver is to be appointed in a delinquency proceeding for an insurer not domiciled in this state, the court shall appoint the department as ancillary receiver. The department shall file a petition requesting the appointment on the grounds set forth in s. 631.091:

(a) If it finds that there are sufficient assets of the insurer located in this state to justify the appointment of an ancillary receiver, or

(b) If 10 or more persons resident in this state having claims against such insurer file a petition with the department requesting the appointment of such ancillary receiver.

(2) The domiciliary receiver for the purpose of liquidating any insurer domiciled in a reciprocal state shall be vested by operation of law with the title to all of the property (except statutory deposits, special statutory deposits, and property located in

this state subject to a security interest), contracts and rights of action, and all of the books and records of the insurer located in this state, and it shall have the immediate right to recover balances due from local agents and to obtain possession of any books and records of the insurer found in this state. *It shall also be entitled to recover the property subject to a security interest, statutory deposits, and special statutory deposits of the insurer located in this state, except that upon the appointment of an ancillary receiver in this state, the ancillary receiver shall during the ancillary receivership proceeding have the sole right to recover such other assets.* The ancillary receiver shall, as soon as practicable, liquidate from their respective securities those special deposit claims and secured claims which are proved and allowed in the ancillary proceeding in this state, and shall pay the necessary expenses of the proceeding. All remaining assets it shall promptly transfer to the domiciliary receiver. Subject to the foregoing provisions, the ancillary receiver and its agents shall have the same powers and be subject to the same duties with respect to the administration of such assets as a receiver of an insurer domiciled in this state.

(3) The domiciliary receiver of an insurer domiciled in a reciprocal state may sue in this state to recover any assets of such insurer to which it may be entitled under the laws of this state.

Fla.Stat.Ann. ch. 631.152 (West 1994) (emphasis added).

Citing subpart 2 of § 631.512, Lifeco and the Delaware Department argue that since National's $8,000,000 claim against Lifeco is not a statutory deposit, a special statutory deposit or a security interest in property located in Florida, the Delaware Department, as domiciliary receiver, has title to that claim pursuant to § 631.512(2) and the Florida Department is therefore not a party in interest. In its memorandum in support of the Rule 2004 motion, the Florida Department re-

sponds that § 631.152 is not applicable. It points out that subpart (2) is specifically limited to receiverships "for the purpose of liquidating an insurer."

Since National is in a rehabilitation proceeding, I agree with the Florida Department.[5] Additionally, other provisions of § 631.152 make it clear that it does not apply here. Subpart (1) of the section provides that the ancillary receiver's appointment is conditioned on the Florida Department showing the existence of a § 631.091 situation—a domiciliary receiver engaged in liquidating the business. That is not the situation here. Subpart (2) contemplates a liquidation by the ancillary receiver of the "other assets" and a remittance of the net proceeds to the domiciliary receiver. Likewise, this is not within the contemplation of a rehabilitation receivership.

The Florida Department argues that its ancillary receivership is pursuant to a conservation concept governed by § 631.131(1) of the Florida Act. I agree, although I find that § 631.071 of the Florida Act is also implicated because the latter indicates when an ancillary receiver may be appointed to conserve the assets of a foreign insurer. Section 631.071 provides, in pertinent part, as follows:

> The department may apply to the court for an order appointing it as receiver or ancillary receiver, and directing it to conserve the assets within this state, of a foreign insurer upon any of the following grounds:
>
> (1) Upon any of the grounds specified in § 631.051 [grounds for rehabilitation of a domestic insurer] or § 631.061 [grounds for liquidation], or
>
> (2) Upon the ground that its property has been sequestrated in its domiciliary sovereignty or in any other sovereignty.

Fla.Stat.Ann. ch. 631.071 (West 1994)

Section 631.131(1), in turn, provides as follows:

> An order to conserve the assets of a foreign or alien insurer shall require the

---

**5.** During oral argument, counsel for the Florida Department argued that § 631.152 is the applicable section here. No explanation was offered as

to the Florida Department's inconsistent positions.

department forthwith to take possession of the property of the insurer within this state and to conserve it, subject to the further direction of the court.

Fla.Stat.Ann. ch. 631.131 (West 1994). Unfortunately, the Uniform Act provides little guidance on what is intended by authorizing the ancillary receiver "to conserve" property.[6]

Case law, however, suggests a very limited function for an ancillary receiver's conservation role. The decision in *Murphy v. Ambassador Ins. Co.*, 195 N.J.Super. 274, 478 A.2d 1243 (Ct.Ch.Div.1984), is particularly relevant here. *Murphy* involved an insurance company's rehabilitation proceeding. Substantially all of the insurer's assets were located in New Jersey. A domiciliary receiver had been appointed in Vermont, and an ancillary receiver had been appointed in New Jersey to "conserve" the assets within the state of New Jersey. The issue, according to the court, was "whether the ancillary or domiciliary receiver was entitled to possession of [the insurer's] New Jersey assets and the balances held by the insurer's agents and brokers ..." *Id.*, 478 A.2d at 1245. In holding that the domiciliary receiver was entitled to the assets the court clearly stated that under the Uniform Act an ancillary receiver's role is subordinate to that of the domiciliary receiver.

If the objective of the Uniform Act is to be achieved, I conclude that the *domiciliary receiver is entitled to possession* of Ambassador's assets *wherever situate.* This result will centralize the management of the delinquency proceeding in one state, eliminate confusion over title and right to possession of the impaired insurer's assets and best achieve the objectives sought by the Uniform Act and its New Jersey and Vermont counterparts.

While I do not question the ancillary receiver's bona fides or his belief that he is acting in the best interests of New Jersey claimants and policyholders, I find that his interpretation of his role as ancillary receiver is based upon a misconception of the

Uniform Law and the legislation enacted in New Jersey and Vermont.

\*　　\*　　\*　　\*　　\*　　\*

In my view the ancillary receiver's possession of Ambassador's New Jersey assets would lead to a result in conflict with the fundamental purpose for which the Uniform Act and our legislation was enacted.

\*　　\*　　\*　　\*　　\*　　\*

I reject as unsound the ancillary receiver's position that an exception to the ordinary rule of possession by the domiciliary receiver arises during the period from appointment by the domiciliary state court to approval of a plan for rehabilitation or liquidation or because of the anomalies of this case (the insurer's principal place of business and virtually all of its assets in a non-domiciliary state). I conclude that possession of Ambassador's New Jersey assets by the ancillary receiver will impede the implementation of any plan approved by the Vermont Superior Court and will foster disputes rather than encourage cooperation by the states within which the impaired insurer transacts business.

*Id.*, 478 A.2d at 1244–48 (emphasis added). While the case of *Florida Ins. Guar. Ass'n (FIGA) v. State of Florida, ex. rel. Dept. of Ins.*, 400 So.2d 813 (Fla.Dist.Ct.App.1981) involved a liquidation proceeding, the court also strongly expressed its view that the Uniform Act "reveals clearly and unmistakably that the vesting of predominant control in the domiciliary state of an ailing and insolvent insurer is the cardinal feature of the act". *Id.* at 816.

The First Ancillary Order purports to authorize the Ancillary Receiver to, among other things:

Take immediate possession of all *property, assets and estate, including, but not limited to,* all offices maintained by Respondent and *all rights of action,* books, papers, evidence of debt, and all property of every kind whatsoever *located in this state,* belonging to or in the possession of said Respondent or its officers, directors,

---

6. Note that § 631.071 refers to "assets" while § 631.131 refers to "property." Presumably, a difference is intended but I have not been able to discern what it is.

employees or agents pertaining to the Respondent or its officers, directors, employees or agents pertaining to the Respondent's business, including, but not limited to, all bank accounts, stocks, bonds, debentures, mortgage, furniture, fixtures and office equipment, and all real property of said Respondent and to hold all such assets pending further Order of this Court;

Apply to this Court for further instructions or orders in the discharge of its duties;

&ast; &ast; &ast; &ast; &ast; &ast;

Commence and maintain *all legal actions* necessary for the *conduct of this ancillary receivership;*

Order Appointing Ancillary Receiver for Purposes of Conservation ¶ A, B, D at 2–3 (emphasis added). The mandate of the First Ancillary Order appears to be broader than that authorized by the case law discussed above. It also conflicts with the Rehabilitation Order which gave the Delaware Commissioner, as domiciliary receiver, exclusive possession and control of National's property, including rights of action. In resolving the conflict between the Rehabilitation Order and the First Ancillary Order, I believe the case law clearly suggests that the ancillary receiver's conservation role pursuant to the First Ancillary Order is not authority to pursue National's claims against Lifeco.

Whatever the propriety of the First Ancillary Order and its intended scope of authority, it is clear that the Florida Department believed that the First Ancillary Order was insufficient authority for it to participate as a creditor in the Lifeco bankruptcy. On June 22, 1994 it filed a motion with the Leon County Court seeking an order authorizing it to pursue causes of action and take all necessary actions in the Lifeco bankruptcy to protect National's policy holders and claimants. That motion stated the Florida Department's position as follows:

In order for the *DEPARTMENT to properly represent* and safeguard the interests of the *policy holders* and claimants of NATIONAL HERITAGE in the State of Florida and to ensure that all sums properly due NATIONAL HERITAGE are collected, *the DEPARTMENT re-quires an order* of this Court authorizing and directing the DEPARTMENT to pursue said causes of action, and directing the DEPARTMENT as ancillary receiver to file a claim in the Bankruptcy Court and take action necessary to protect the interest of policy holders and claimants of NATIONAL HERITAGE in the State of Florida, as a creditor of [Lifeco].

Motion for Order Authorizing Ancillary Receiver to Pursue Causes of Act ¶ 14 at 4. (emphasis added) That motion resulted in the Second Ancillary Order, the terms of which can only be described as extraordinary. The substantive paragraph of that order provides:

The *DEPARTMENT* is authorized and directed to pursue all assets and causes of action as necessary to *liquidate the business and assets of NATIONAL HERITAGE,* in this state, as ancillary receiver, *and to take specific actions,* as necessary *as a creditor* in the pending bankruptcy of Lifeco ... to protect the interest of all policy holders and claimants of NATIONAL HERITAGE in the State of Florida.

Order Authorizing Ancillary Receiver to Pursue Cause of Action at 3 (emphasis added).

The Second Ancillary Order is in direct conflict with the Rehabilitation Order. The Rehabilitation Order authorizes the Delaware Department to operate National's business whereas the Second Ancillary Order authorizes the Florida Department to liquidate National's business in Florida. Additionally, the Rehabilitation Order gives the Delaware Department exclusive authority to pursue claims, including the $8,000,000 claim against Lifeco, whereas the Second Ancillary Order purports to grant that authority to the Florida Department. Equally important, I find that the Second Ancillary Order is defective as to its statutory basis. As authority for the order, the Florida Department's motion cites two sections of the Florida Act:

Florida Statutes §§ 631.091 and 631.152 vest title to causes of action in this State in the Department as ancillary receiver to collect the business and assets and pursue causes of action of a foreign insurer which

has assets, business, or claims in this State.

Motion for Order Authorizing Ancillary Receiver to Pursue Causes of Action ¶ 15 at 4.

Neither of the cited sections of the Florida Act is authority for a receiver in conservation to obtain the type of order that was granted here. Section 631.091 of the Florida Act provides:

> The department may apply to the circuit court for an order appointing it as *ancillary receiver* of, and directing it *to liquidate the business* and assets of, a foreign insurer which has assets, business, or claims in this state *upon the appointment in the domiciliary state of such insurer* of a receiver, liquidator, conservator, rehabilitator, or other officer by whatever name called *for the purpose of liquidating the business* of such insurer.

Fla.Stat.Ann. ch. 631.091 (1994) (emphasis added). The Delaware Department, as domiciliary receiver, is engaged in rehabilitation, not liquidation. Consequently, there is no basis for the Florida Department to invoke § 631.091.

Section 631.152 of the Florida Act, as noted above, grants an ancillary receiver authority over only three specific types of assets: statutory deposits, special statutory deposits and property subject to a security interest. *See* Fla.Stat.Ann. ch. 631.152 (1994). The $8,000,000 claim against Lifeco does not fall within any of the three categories. More importantly, the Florida Department correctly noted in its memorandum in support of its Rule 2004 motion that § 631.152 is limited to liquidations and therefore is not applicable here. I agree.

This court obviously has no authority to declare the Second Ancillary Order void or to otherwise modify it. However, for purposes of deciding the issue before me—whether the Florida Department, as ancillary receiver, is a party in interest in this bankruptcy—I decline to be bound by an order which (a) patently conflicts with a prior rehabilitation order and (b) I find to have been incorrectly granted. Therefore, I conclude that the Florida Department is not a party in interest here based on its purported position as the

representative of National's claim against Lifeco.

While I am cognizant of the full faith and credit principle that when two inconsistent final judgments are rendered, the later judgment is accorded conclusive effect in a third action, *Restatement of Law 2nd*, Judgments 2nd § 15, I do not believe it applies here. As pointed out in the reporter's note to § 15, the last-in-time rule applies when a party fails to rely upon the first judgment in the second action. Here the Delaware Department was not even a party to the proceeding which resulted in the Second Ancillary Order. Indeed, it appears that the Second Ancillary Order was the result of an ex parte proceeding as to which the Delaware Department did not receive notice.

As noted above, there is a factual dispute as to whether the Delaware Department requested the Florida Department to obtain the Second Ancillary Order. By affidavit the Delaware Department denies that such a request was made. The Florida Department submitted a counter affidavit addressing the issue. From that affidavit, I find that there were discussions between certain employees of the two Departments about the Florida Department taking an active role in the Lifeco bankruptcy case. However, it is quite unclear from that affidavit as to how that role would be implemented. The discussion apparently included the possibility of a formal agreement to divide duties between the two Departments and the concept that the Florida Department would handle matters under the direction of the Delaware Department. There is no statement in that affidavit that to implement the role for the Florida Department the Delaware Department requested the Florida Department to file a motion in the Florida court, and there is no suggestion that the Delaware Department had knowledge of the terms of, or even the substance of, the motion in support of and the terms of the Second Ancillary Order. Given the fundamental conflict between the Rehabilitation Order and the Second Ancillary Order and the Delaware Chancery Court's specific retention of jurisdiction over the rehabilitation proceeding, it seems implausible to me that the Delaware Depart-

ment would knowingly be a party to such a motion. Consequently, notwithstanding any discussion which may have taken place between certain employees of two Departments regarding an active role for the Florida Department in the Lifeco bankruptcy, I find that the Delaware Department did not receive notice of the purpose and intended effect of the Second Ancillary Order.[7]

My finding here is not intended to bring into question the bona fides of the Florida Department. All appearances are that the Florida Department undertook serious efforts to protect the interests of its constituents. However, I conclude that the Second Ancillary Order was ill-founded and is not binding on this court in addressing the limited issue of standing. Although I am unable to discern how, under the scheme of the Uniform Act, the Florida Department could achieve standing in this bankruptcy, my conclusion here does not foreclose the possibility that with an appropriate order from the Delaware court or the Florida court it could do so.

■ Having concluded that the Florida Department, as ancillary receiver of National, has no standing as a creditor of Lifeco, I now turn to its argument that it has standing because it has a significant economic and regulatory stake in this Chapter 11 case.

■ Citing *In re Amatex,* 755 F.2d 1034 (3rd Cir.1985); *In re Johns–Manville Corp.,* 36 B.R. 743 (Bankr.S.D.N.Y.1984); *In re Public Serv. Co. of New Hampshire,* 88 B.R. 546 (Bankr.D.N.H.1988) and *In re Hathaway Ranch Partnership,* 116 B.R. 208 (Bankr. C.D.Cal.1990), the Florida Department argues that the "party in interest" concept should be broadly construed and that since the Florida Department "clearly has an economic stake in the outcome of this bankruptcy" it has standing. The cases relied upon by the Florida Department are distinguishable from the instant situation, and I reject the proposition that anyone with an economic stake in the outcome of a bankruptcy case has standing to participate in that case.

*Amatex* and *Johns–Manville Corp.* both resulted in a finding of standing for potential or prospective creditors of the debtor. Specifically, in *In re Amatex* a primary consideration of the court was the fact that "none of the parties currently involved in the reorganization proceedings [had] interests similar to those of future claimants, and therefore future claimants required their own spokesperson". 755 F.2d at 1042–43. Quite the contrary situation exists here. Pursuant to the purpose of the Uniform Act, the Delaware Department, as domiciliary receiver, is charged with pursuing the interests of all the constituents of National in its parent's bankruptcy case.

In *In re Public Serv.* a New Hampshire court found that the state of New Hampshire, through certain agencies and entities, had standing in the bankruptcy of a public utility company located in the state of New Hampshire. The Uniform Act, however, directs that a domiciliary receiver, to the exclusion of any ancillary receivers, speaks for and represents the interests of the creditor/insurer.

■ Finally, in *Hathaway* the court gave standing to a limited partner of the general partner of the debtor limited partnership. The holding is understandable given the general partner's direct liability exposure in the bankruptcy case. Here the ancillary receiver purports to act as a representative of creditors of National, which itself is a creditor of Lifeco. I find no statutory or judicial support to conclude that a creditor of a creditor has standing in a bankruptcy case. Indeed, numerous cases state the contrary. *See In re Comcoach Corp. (Roslyn Savings Bank v. Comcoach Corp.),* 698 F.2d 571 (2d Cir.1983) (mortgagee not a party in interest entitled to seek relief from automatic stay because neither a creditor or debtor); *In re Morris White Handbags Corp.,* 77 F.2d 827 (2d Cir. 1935) (creditors of a creditor of the bankrupt, claimants of a lien upon a compromised claim, had no standing to object to other claims); *Matter of Goldman,* 82 B.R. 894, 895 (Bankr.S.D.Ohio 1988) (creditors of an es-

---

7. It may be that under the scheme of the Uniform Act the participation of the domiciliary receiver in the ancillary court proceedings is not necessary. I only hold that for purposes of the last-in-time principal participation in the second action is necessary.

tate's creditor are not parties in interest); *In re Ledges Apartments*, 54 B.R. 85 (Bankr. D.Vt.1985) (bank not a "party in interest" entitled to move to modify automatic stay where it had status of neither debtor nor creditor and sought modification only to proceed against debtor's partnership who guaranteed credit); *In re Baker*, 29 B.R. 174 (Bankr.N.D.Miss.1983) (assignee of debtor's creditor not party in interest); *In re Tour Train Partnership (Greg Restaurant Equip. and Supplies, Inc. v. Tour Train Partnership)*, 15 B.R. 401 (Bankr.D.Vt.1981) (judgment creditor of creditor of bankrupt not a "real party in interest" because the judgment creditor was not itself a direct creditor of the bankrupt).

Furthermore, following the reasoning of the Florida Department, insurance commissioners in any state in which National sells policies or has assets would also have standing in this case. Allowing such participation would not only burden the case administration but could also create confusion and conflict. By reason of the Rehabilitation Order the Delaware Department, as domiciliary receiver, speaks for National with respect to all its interests. To allow others to participate in that role runs counter to the purpose and intent of the Uniform Act. It appears to me that the two Departments have ended up in just the type of conflict that the Uniform Act was designed to avoid. To give the Florida Department standing in this case, particularly in light of the conflicts between the two departments, would produce a situation "in conflict with the fundamental purpose for which the Uniform Act" was adopted. *Murphy, supra*, 478 A.2d at 1247.

To expand the concept of standing to include such entities as the Florida Department would effectively eviscerate the purpose of Code § 1109(b), i.e., to place a limit on who can participate in a case in order to make the case manageable. *Cf. In re Public Serv.*, at 554. While this court has no authority to act as a referee in the conflict between the two Departments in the receivership of National, it has authority in attempting to insulate Lifeco's reorganization process from the disruptive effect of that conflict by recognizing just one spokesperson

for National's interest here. Consequently, I conclude that the Florida Department's economic stake in the outcome of this bankruptcy case, by reason of its economic stake in National as an ancillary receiver, does not make it a party in interest within the contemplation of Code § 1109(b).

It would appear that either the Delaware Department and the Florida Department are involved in a "turf war" or there has been a breakdown in communications. Whatever the situation, having Lifeco respond to two separate entities representing the same interest is not the solution. If the Florida Department is dissatisfied with the Delaware Department's handling of National's rehabilitation proceeding, as it has so suggested on the record, it must seek redress in a forum other than this one.

### ORDER

For the reasons stated in the Memorandum Opinion of this date the Motion to Dismiss Or, In the Alternative, to Transfer Venue (Doc. # 29) and the Motion for Order Authorizing Rule 2004 Examination of Specified Officers and Directors (Doc. # 30A) are denied.

### ORDER DENYING MOTION TO ALTER OR AMEND

This is with respect to the Motion to Alter or Amend Memorandum Opinion and Order Dated September 13, 1994 (the "Motion to Alter") filed by the Florida Department of Insurance (the "Florida Department") and the Florida Life and Health Insurance Guarantee Association ("FLAHIGA"). The Motion to Alter requests that the court alter or amend its September 13, 1994 Memorandum Opinion and Order (the "Opinion") to find that Thompson Road Trust, TRST Orlando, Inc. and FLAHIGA have standing under Bankruptcy Code § 1109(b) to move to dismiss or transfer venue of this case and to grant the dismissal or transfer venue as requested in the Florida Department's Motion to Dismiss Or, In the Alternative, To Transfer Venue (the "Venue Motion"). For the reasons set forth below, I deny the Motion to Alter.

■ According to the Motion to Alter, the court's Opinion did "not address the standing of Thompson Road Trust, TRST Orlando, Inc. or FLAHIGA to move this Court to dismiss this case or to transfer venue." (p. 2) That assertion is correct. The reason I did not is because none of those three parties was a movant. The Florida Department filed its Venue Motion on July 11, 1994. On August 2, 1994, TRST Orlando Inc. filed a two-page response to the Venue Motion stating "its concurrence with and response in support of the Motion". TRST Orlando, Inc. requested that the Florida Department's Venue Motion be granted. (Doc. # 54) In support of its Venue Motion, the Florida Department filed a supplemental memorandum on August 8, 1994. One of the exhibits attached to that memorandum is an August 5, 1994 affidavit by William E. Falk, the executive director and general counsel for FLAHIGA, which states that FLAHIGA "hereby formally supports the motion to dismiss or for transfer of venue filed by the Florida Department...." [1] (Doc. # 66) At the August 9, 1994 hearing counsel for the Thompson Road Trust voiced "support for the motion". (Tr. 17) Thus, none of the three entities joined in the Venue Motion as a movant, or filed their own venue motion pursuant to Fed.R.Bankr.P. 9013. They merely voiced their support for the Florida Department's Venue Motion. Because they did not file a motion or even join the Venue Motion as a co-movant, in rendering the Opinion there was no basis for me to deem them to be movants whose standing was relevant to the Venue Motion.[2] Stated differently, the three entities' support for the Venue Motion simply meant that they supported the Florida Department's position, including the purported standing of the Florida Department to be heard. Having decided that the Florida Department does not have standing, I do not understand how the support of the three entities can be viewed as implicating a determination of their standing to be heard on the remainder of the Florida Department's Venue Motion.

■ The Motion to Alter, premised on Fed.R.Bankr.P. 7052 and 9023, cites no authority for the Florida Department's position that these three parties should be treated as movants on the Venue Motion. While I find no helpful guidance in any authoritative interpretation of Rules 7052 and 9023, I believe that an appeal practice rule does provide guidance here. I start by asking the question: Could any one of the three entities take an appeal from the July 13, 1994 ruling? I believe not. "[T]he fact that the appellants were given an opportunity to be heard in the bankruptcy court does not provide a basis for standing on appeal." *In re Central Ice Cream Company,* 62 B.R. 357, 360 (N.D.Ill. 1986).

■ While the Bankruptcy Code did not adopt Bankruptcy Act § 39(c) which provided that only a "person aggrieved" by an order could appeal that order, it remains the rule under Bankruptcy Code practice that appellate standing is limited to a person aggrieved by an order of the bankruptcy court. *In re Dykes,* 10 F.3d 184 (3rd Cir.1993). "A 'person aggrieved' has been defined as a person whose rights or interests are 'directly and adversely affected pecuniarily' by the order or decree of the bankruptcy court." *Id.* at 187. I do not understand how a determination that a particular movant does not have standing could aggrieve parties who are not movants. Thus, I conclude that none of the three entities which supported the Florida Department's Venue Motion are aggrieved by my September 13, 1994 ruling, and therefore none of them would have

---

**1.** In the Motion to Alter, the Florida Department states that FLAHIGA "joined in and supported the" Venue Motion (p. 1). The Florida Department does not cite the record for the assertion that FLAHIGA "joined in" the Venue Motion, assuming that the Florida Department intended that to mean something other than "support" for the Venue Motion.

**2.** Had any of the entities filed a motion pursuant to Fed.R.Bankr.P. 2018(a) to intervene in the matter a determination of their standing may have been called for. I say "may have been" because the intent of Rule 2018(a) in this regard is unclear. Fed.R.Bankr.P. 7024 incorporates Fed.R. of Civ.P. 24 for adversary proceedings but the conditions to intervention spelled out in that Rule are not incorporated into Rule 2018(a). In any event, none of the three entities invoked Rule 2018(a). *Cf. Marino v. Ortiz,* 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988).

standing to appeal the September 13, 1994 ruling. If they would not have standing to appeal, it follows that the Florida Department could not appeal on their behalf. *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1276 (9th Cir.1990) ("[A] party may only appeal to protect its own interests, not those of any other party.") Likewise, I conclude that the Florida Department has no basis for requesting this court to render a determination of the right of the three entities to have the Venue Motion determined on the merits, premised on the notion that the three entities are movants on that motion. Of course, any one of the three entities has a right to file their own motion to dismiss or transfer venue.[3]

There are a number of practical reasons supporting the result reached here.

First, unlike a conventional civil case, or an adversary proceeding in a Chapter case, where there are a limited number of parties, in a Chapter case there may be hundreds, and in some cases thousands, of parties in interest. If everyone who decided to stand up and support a movant, or support a respondent, thereby took on the mantle of a movant, or a respondent, it would create procedural chaos.

Second, there is an insufficient record on this matter as to the nature and extent of the interests of these three entities in the case and how their interest in having the case in Florida weighs against the Lifeco's interest in keeping the case here. In addition to determining standing, the court needs to know what a particular movant's interest is in transferring venue. That the three entities supported the Venue Motion implies that they believed that the Venue Motion had merit because the Florida Department had good reason to make the Venue Motion. But this belief may very well have been based on the Second Ancillary Order, an order which I found to be fundamentally flawed. Absent that factor, I do not know how to weigh the interest of any of the three entities in seeking a dismissal or transfer. This goes not to the question of standing but to why a partic-

ular movant's position should outweigh the debtor's forum selection and the interest of parties who may object to a transfer. For example, a creditor with an uncontested but nominal claim would obviously have standing but may have no persuasive reason, vis-a-vis the debtor's venue selection and the interest of other parties, to have venue transferred.

Third, to treat these three entities as movants would raise a procedural due process problem. As to FHALIGA and the Thompson Road Trust, their support was first made a matter of record the day before and the day of the hearing, respectively. To deem that support to be those two parties' "motions" which were heard at that August 9, 1994 hearing, would constitute insufficient notice to Lifeco and parties in interest. Even as to the support response filed by TRST Orlando, Inc. on August 2, 1994, I note that it was filed well after the July 19, 1994 filing of the Delaware Insurance Department's objection to the Florida Department's Venue Motion and on the same day as the filing by Lifeco of its objection to the Florida Department's Venue Motion.

Based on the foregoing, the Florida Department's Motion to Alter is hereby denied.

---

**3.** Although the record before me may be incomplete on the matter, I have difficulty understanding how, in light of the September 13, 1994 ruling, FLAHIGA would have standing to bring such a motion.